**James M. Little, Plaintiff-Appellant, v. Ralph Scheu, Defendant-Appellee.**

**Gen. No. 51,178.**

First District, First Division.

September 23, 1968.

Rehearing denied October 23, 1968.

Gilmartin & Wisner, of Chicago (Richard S. Wisner and Dom J. Rizzi, of counsel), for appellant.

Kralovec, Sweeney, Marquard & Scoby, of Chicago (Charles V. Kralovec and Glenn H. Prohaska, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a personal injury action in which the jury returned a $30,000 general verdict for plaintiff. The jury also answered a special interrogatory and found that plaintiff was "guilty of contributory negligence which proximately caused the injuries complained of." The court entered a judgment in favor of the defendant. Plaintiff appeals from an order which denied his post-trial motion that the court set aside the answer to the special interrogatory as being against the manifest weight of the evidence.

On October 2, 1962, at approximately 9:45 p. m., plaintiff, an eastbound pedestrian in the east-west crosswalk on the south of the intersection of Chicago and Michigan Avenues, was struck by defendant's automobile, north-

bound on Michigan Avenue. At that point Michigan Avenue runs north and south and Chicago Avenue runs east and west. The total width of Michigan Avenue at the intersection was 88.4 feet. There was a safety island in the south center of Michigan Avenue, which separated north and southbound traffic. It was five feet in width and extended six or eight feet into the south east-west crosswalk. It was 41 feet from the west curb of Michigan Avenue to the west curb of the safety island, plus 42 feet from the east curb of the island to the east curb of Michigan Avenue. There were three traffic lanes in addition to a left-turn lane for northbound traffic on Michigan Avenue. There were traffic light control signals on the southwest corner and on the southeast corner of Michigan Avenue. On the island was mounted a traffic control signal for north-southbound traffic, in addition to a left-turn signal for Michigan Avenue northbound traffic intending to make a left turn into Chicago Avenue at the intersection.

Plaintiff testified that it was raining that night, and he was wearing a light-colored raincoat. He had alighted from an eastbound Chicago Avenue bus at the southwest corner of Chicago and Michigan Avenues. After he purchased a newspaper on the southwest corner of the intersection, he observed that the traffic light on the east side of Michigan Avenue controlling east-west traffic was red. In addition to plaintiff there were about a half-dozen people on the west side of Michigan Avenue waiting for the light to change to green. When the light turned green, the group proceeded to cross Michigan from the west side of the street to the east side, and plaintiff started to cross the street behind them in the marked crosswalk.

When plaintiff was more than half way across Michigan Avenue, the east-west traffic light began to flicker or change, and plaintiff hastened his step to try to

complete crossing the street. Plaintiff did not slacken or slow down his gait at any time. He did not step onto the safety island—"I stepped around the island to the north." He was "about six or eight feet from the east curb" when defendant's car knocked him to the pavement. Defendant's car was traveling northbound in the lane nearest the east curb. There were no cars ahead of defendant's car, and when plaintiff started to hurry, defendant's car was about 20 to 30 feet away from him.

Occurrence witnesses for plaintiff included Joe W. Gound and Fay Eckman Javor. Mr. Gound, who was driving an automobile northbound on Michigan Avenue, testified that the light for northbound traffic on Michigan Avenue was green when he was about 50 yards from the south crosswalk. The car in front of him was either stopped or had reached the intersection before him and did not proceed on the green light. Gound slowed down to a full stop. He was in the second lane from the center of the street. There was another car stopped immediately to his left. He stated, "I had occasion to notice a pedestrian within the crosswalk as I was stopped there. . . . I would say he was running, going east." The pedestrian was 20 or 25 feet to the west of his car. "I continued to watch the pedestrian. . . . He ran in front of the car that was next to me, to my left, he ran in front of my car, and he was struck by a car to my right. I did not see the car to my right at any time before the collision. I actually saw the impact between the pedestrian and the car to my right." At the time of the impact his car and the car to his left were stopped. He stated the point of impact was about 20 feet from the east curb of Michigan Avenue, and defendant's car was going between 5 and 10 miles an hour.

On cross-examination, he testified that plaintiff was 10 feet to the west of the safety island when he first saw him. Plaintiff was running and continued to run the whole time that he kept him under observation. He further stated that the north-south light never changed its color (green) from the first time he saw it, and it turned red after the occurrence.

Plaintiff introduced into evidence the deposition of Mrs. Fay Eckman Javor. She and her husband, who was also an occurrence witness, were traveling north in the center lane of Michigan Avenue. As they approached the intersection on Chicago Avenue, there were three cars abreast in front of them, and they were behind the center car. She said, "When I first saw the pedestrian, Mr. Little, he was between the center car and the car to the right in the center, in the front in the first lane or first row of cars. . . . He was hurrying. That's about all I could say. I think our car was standing still when I first saw Mr. Little." On cross-examination, she testified there were four cars stopped at the intersection. Defendant's car was going north to the right of the three cars in front of them. She did not notice any other pedestrian within the crosswalk, and at the time of impact the streets were a little wet.

Defendant testified that he was proceeding north on Michigan Avenue in the east lane of travel from the center. As he left Superior Street, the light at Chicago and Michigan was red, and when he was about 50 feet away from the corner the light turned green. He was traveling very slowly, because he did not know how soon the light would turn green. As they got to the intersection he was moving between five and eight miles an hour. He said, "The car that I am sure was parked in the center lane had started up when the light started, well, he was just ahead of me a little bit, and at that moment a person ran right in front of the other car,

425

narrowly missing him and ran right into my car. That person was Mr. Little. When I first saw Mr. Little he was just running from in front of the car to my immediate left. . . . I immediately applied the brake and there was a contact between my car and Mr. Little. . . . I stopped within two or three feet. The color of the light for north and southbound traffic on Michigan Avenue at the time of this contact between my car and Mr. Little was green." There was no traffic light change until after the impact.

Mrs. Lucille Scheu, the wife of the defendant, testified she was seated next to her husband at the time of the occurrence. Their car was in the curb lane headed north on Michigan Avenue, and the light had turned green as they approached the intersection. The car immediately to their left started to move on the green light, and plaintiff ran in front of it and hit their car. The first time she saw plaintiff was when he was running in front of their car.

The deposition of Peter Javor, an occurrence witness, was read into evidence on behalf of defendant. He was driving an automobile north on Michigan Avenue and was in the center lane as he approached Chicago Avenue. There were cars on his left and one car in front of him. As he approached the intersection the light changed to green for northbound traffic, when he was about 30 to 50 feet south of the light. There was a car ahead of him in the center lane, standing still. Defendant's automobile was to his right and about two car lengths ahead of him. He said the first recollection he had of plaintiff was that he was stepping down from the island in the middle of Michigan Avenue, moving east. "I saw him step down from the island and hurriedly or somewhat in a trot, race or run across the intersection." The traffic light for northbound traffic was green and never changed to red at any time after he first saw defendant. He said, "As to whether Mr. Little crossed in front of any

vehicles before he was struck, yes he did, to the car in front of my left side, the car in front of me, then he finally, he was struck on the right side by Mr. Scheu's car. As to whether either or both of those other cars were moving or standing still when Mr. Little crossed in front of those cars to my left of the car in front of me I do not know for sure."

Plaintiff asserts that the evidence shows the following salient facts.

1. The plaintiff had commenced crossing the street in the crosswalk with the traffic light in his favor.

2. There was a change in the traffic light signal while the plaintiff was in the act of crossing the street.

3. When the plaintiff noticed that the traffic light signal was changing he hastened his step and stepped livelier to try to complete crossing the street, and at no time prior to that had he slackened or slowed his gait while crossing the street.

4. The plaintiff was in the crosswalk when he was struck by the defendant's automobile.

5. The plaintiff was struck by the defendant's automobile when he was a very short distance, six to nine feet, from arriving at the opposite curb of the street.

6. Three other automobiles remained stopped at the crosswalk while the plaintiff was in the process of completely crossing the street.

7. The plaintiff first saw the defendant's automobile when it was twenty feet away from the crosswalk.

8. The defendant did not blow his horn or give any warning signal before the accident occurred.

From the foregoing, plaintiff contends that the answer to the special interrogatory should have been stricken because there was no evidence to support a finding that plaintiff was negligent. Plaintiff cites Peach v. Peach, 73 Ill App2d 72, 218 NE2d 504 (1966), where it is said (p 79):

> "The law is well settled that a trial court may set aside a special interrogatory inconsistent with the general verdict when such interrogatory is against the manifest weight of the evidence. . . . and may also set aside a special interrogatory on a single issue where such interrogatory is against the manifest weight of the evidence."

Also, Young v. Illinois Cent. R. Co., 319 Ill App 311, 49 NE2d 268 (1943), where it is said (p 322):

> "The affirmative finding of a special verdict of negligence is not binding upon the trial court upon defendant's motion to set it aside, if it is not supported by any evidence, or if, as here, it is contrary to the manifest weight of the evidence."

Plaintiff also contends that by statute (Ill Rev Stats, c 95½, § 129), defendant should have yielded the right-of-way to plaintiff who had entered the intersection crosswalk while the light was green, even though at the moment of impact the light may have favored defendant. Plaintiff argues that a pedestrian properly assumes that the right-of-way will be yielded him in such circumstances and further, that, absent some warning or notice to the pedestrian that the law is about to be transgressed by a motorist, the pedestrian's conduct in continuing to cross the street does not constitute contributory negligence. Plaintiff's authorities on this point include Cogin v. Ide, 196 Minn 493, 265 NW 315 (1936), where it is said (p 318):

> "The statutory provision giving the pedestrian the right of way on a crossing must be given some effect. Where, as here, the plaintiff has such right of way, she should not be held guilty of contributory negligence unless it appears that, under the circumstances shown, she saw and appreciated the danger of the approaching car in time to avoid the collision, or was

428

charged with the knowledge of the danger. It must be assumed that she did not intentionally expose herself to a known danger. But if we hold that one not aware of danger and having the right of way must nevertheless yield the right of way to an approaching car, which plaintiff would have had to do in this case to avoid injury, then we are not only depriving her of her statutory right of way, but we are turning the statute around and conferring the right of way on the defendant."

■ ■ Initially, we believe that a pedestrian's crosswalk rights should be rigorously enforced because of the propensities of many drivers to use their automobiles as lethal weapons. However, in our opinion, the pronouncements made in Peterson v. General Rug & Carpet Cleaners, Inc., 333 Ill App 47, 77 NE2d 58 (1947), apply here. There it is said (p 60) :

"We did not hold in the Mahan case, as defendants argue, that a person who starts across an intersection with the green light in his favor is absolutely entitled to the right of way under any and all circumstances. We did hold, however, that where a person, in reliance upon a green light, has committed himself to a crosswalk, traffic proceeding in an opposite direction upon a change of lights is required to observe his right of way and give him a reasonable chance to reach a place of safety. Defendants also cite a statement in the Moran case that the plaintiff therein had no right to unreasonably intrude herself into the midst of traffic. That statement has no application to the facts of the instant case, where plaintiff entered the crosswalk with the green light in her favor, and there is no evidence to show that she 'intruded herself into the midst of traffic.' "

429

■ In the instant case, two disinterested witnesses, Joe Gound and Peter Javor, after the green light had changed for northbound traffic on Michigan Avenue, placed plaintiff running east in the crosswalk, either 10 feet to the west of the safety island or stepping down from the island and passing cars in two lanes before he was struck by defendant's car. From this testimony we think reasonable men might differ as to whether plaintiff was using due care for his own safety by not stopping at the safety island after the light changed, instead of leaving a place of safety (the island) and "intruding himself in the midst of traffic." We conclude that the issue of plaintiff's contributory negligence was a question of fact for the jury.

■ ■ Under the law, we cannot disturb the answer of a jury to a special interrogatory unless it is against the manifest weight of the evidence, and an opposite conclusion is clearly evident. Manifest means clearly evident, plain and indisputable. From our examination of this record, the affirmative answer of the jury to the special interrogatory on the question of whether plaintiff was "guilty of contributory negligence which proximately caused the injuries complained of," was not against the manifest weight of the evidence. The pronouncements made in Borries v. Z. Frank, Inc., 37 Ill2d 263, 266, 226 NE2d 16 (1967), apply here, and the special finding of the jury must prevail over the inconsistent general verdict in favor of plaintiff. Therefore, the trial court was correct in entering judgment in favor of defendant, and the judgment is hereby affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.