JOSEPH DRZEWIECKI, Plaintiff-Appellant, *v.* RENNA S. McCASKILL, Defendant-Appellee.

First District (5th Division)   No. 61127

Opinion filed August 27, 1976.

628

D. Varraveto, Jr., and Robert P. Brandenburg, both of Chicago (Joseph E. Kurland, Jr., of counsel), for appellant.

Udoni & Johnson, of Chicago (Joseph B. Lederleitner, of counsel), for appellee.

Mr. JUSTICE BARRETT delivered the opinion of the court:

This is an appeal from the judgment on the verdict in favor of defendant and against plaintiff and from denial of plaintiff's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

An action was brought to recover damages for injuries sustained by plaintiff, a pedestrian, as a result of the alleged negligent operation of a motor vehicle by defendant. The alleged injury occurred in or about the east crosswalk of the intersection of west 51st Street and California Avenue in Chicago.

The relevant testimony adduced at trial is as follows:[1]

Plaintiff called the defendant under section 60 of the Civil Practice Act of Illinois. She testified that she was driving west on 51st Street and that she stopped for a red light at the intersection of 51st Street and California Avenue, which intersection was governed by traffic lights on each corner. She stated that she noticed that there was a bus parked along the curb to her right; that the front end of her vehicle was about seven feet back from the front end of the bus; that several people got off the bus and crossed the street in front of her vehicle. She estimated that the front end of the bus was about three feet into the marked crosswalk which was about four feet wide. She further stated that she remained stopped for a few seconds until the light turned green, at which time she started. At the time she

---

[1] Plaintiff's first witnesses, a doctor and a medical records librarian, were concerned only with the nature, extent and severity of injuries and hospital treatment. In view of the jury verdict of not guilty we need not consider that testimony.

started to move she noticed a man running in a southwesterly direction at a diagonal. When she saw him for the first time he was about four feet to the right of her car. He ran across in front of her car. He turned around and ran back. It was at this point that she struck the plaintiff with the right front fender of her car. She said she applied her brakes prior to impact, but did not sound her horn. She testified that she started up when the light was green in favor of east-west traffic. On examination by her attorney she stated that she first saw the plaintiff when he was about four feet from her and was running diagonally in a southwest direction; that he had moved out of the crosswalk at the moment of impact and was 10 feet west of the crosswalk. She further testified that the plaintiff at no time prior to the accident ever crossed in front of her car and that from the time she first saw him to the moment of impact about two or three seconds elapsed.

Later she testified in her own behalf and in addition to her testimony under section 60 of the Civil Practice Act she described 51st Street as having a white center line for two lanes in each direction, one for parking and one for traffic. She further stated that as she drove west there was no traffic ahead of her; that the highest speed of her car attained for the block before the accident was about 20 miles per hour; that as she proceeded west she noticed the bus stopped along the curb to her right; that when her car was 300 feet from the intersection her speed was 15 to 20 miles per hour and the traffic light was red. She continued on and came to a stop before the intersection while the light was still red at a point where the front of her car was about seven feet back from the front end of the bus; that the left side of her car was close to or about one foot away from the center line.

She further testified that as she was stopped at the red light it looked to her like five or six people got off the bus and crossed in front of her vehicle. She said her car remained standing for a few seconds before the light changed from amber to green. She waited until the light was green before she started. After she started she noticed someone was running on the diagonal. She further testified that traffic started going east with the green light in favor of east-west traffic and then the man came back and got within about two feet of her car and the right front fender of her car struck the man. The bus did not start with her. She saw the man turn around and run back when he was one foot to the left. He ran across in front of her and then turned around and ran back. After the impact he was laying on the street about a foot from the right headlight.

Plaintiff testified in his own behalf. After describing himself, his employment and age, he testified that he was going to work on the west 51st Street bus and that "this was my usual manner of going to work." After he got on the bus he would go all the way to California Avenue. On this particular morning he was going to get off at California and cross the

street to get the northbound bus going to 26th Street. He further testified that when the bus got to California it stopped on the northwest corner about a foot away from the curb.[2]

He said there were about six or seven other persons other than he alighting from the bus. Most of them got off in front as he did. After they alighted he stepped off the bus, partly on the curb and partly on the sidewalk; that there is a crosswalk on 51st Street on the east side of California Avenue running north and south on California, extending from curb to curb and is about five feet in width and is marked off by white lines; that the front end of the bus he got off of was stopped on 51st Street east of the crosswalk about a half a foot over the line. He further stated that as he got off the bus he observed that all of the lights were in working order and observed the southeast light in particular; that when he looked at that light it was green for north and southbound traffic on California Avenue, but when he observed the condition of this light he was on the corner curb where he had gotten off the bus. He stated that people who got off the bus were two or three steps ahead when they started to cross; they were going south to catch the northbound bus; that he was going south to catch the northbound bus and that the light was green for north and southbound traffic on California Avenue. He further testified that immediately before he was struck by the car he was walking south; that before the accident happened he was not running in a southwesterly nor in an easterly direction. In fact, he said, he was not running at any time. After he was hit the only thing he recalled was waking up in the hospital.

He further stated that from the time he got off the bus to the time of the accident he did not notice any vehicles proceed west, but saw one car coming from the west; that car was starting out from the corner of 51st and California; that at the time he saw the car it had come to a stop; that the only warning he had of the approach of defendant's vehicle was the screams of a woman. The balance of plaintiff's testimony has to do only with the description of injuries, hospitalization, treatment, etc. and as heretofore indicated need not be considered at this time.

Cross-examination added nothing to the direct examination.

Obviously the evidence presented by plaintiff and defendant was in some measure contradictory.

In addition to her own testimony defendant called as witnesses Ella Lee Bush, an eyewitness, and Nancy Piotrowski, a post-occurrence witness. Ella Lee Bush testified that she and an acquaintance[3] were on their way to work in a bus proceeding in a westerly direction; that she got off the bus at

---

[2] Locating the bus at the northwest corner was obviously an error inasmuch as all of the witnesses placed the bus at the northeast corner.

[3] Acquaintance died before trial.

California Avenue; that we were going to cross 51st Street from north to south. The light across the street was green for us to cross. We didn't cross but waited for a change and the light did change. She further testified that she witnessed an accident involving a pedestrian; that she first became aware of the pedestrian as he was standing at the curb. He ran around us in front of the bus and out into the street. She further testified that the pedestrian started running in front of the bus. He was at the corner but darted out and had gotten half way across the other side of the bus when the light changed green for 51st Street. We stepped back. We saw the eastbound traffic start up. We did not see the car involved prior to the accident, but assumed it was on the other side of the bus. She further testified that at the time of the accident she did not know whether or not the man was in the crosswalk or outside the crosswalk, but the bus was back from the corner and so was the car. The defendant's car did not speed up. I saw that defendant's vehicle was going no more than 10 miles per hour at the moment. She further stated that the pedestrian stepped right in front of the crosswalk at the front of the car somewhere between the two lines. At the time of the accident the plaintiff was running and the east and westbound traffic on 51st Street had a green light.

Nancy Piotrowski's testimony as a post-occurrence witness simply placed the position of the plaintiff and the defendant's vehicle after the accident. She said that plaintiff was inside the crosswalk.

OPINION

■■ The first issue presented for review by plaintiff is whether plaintiff was guilty of contributory negligence as a matter of law. We need not consider this issue because neither party moved for a directed verdict at the close of all of the evidence and the case was presented to the jury on the factual issue of negligence vs. contributory negligence.

Plaintiff contends that traffic receiving a green light shall yield the right-of-way to a pedestrian in the intersection who has entered the intersection with a green light in his favor. It is defendant's position that plaintiff darted or ran into 51st Street without looking as the traffic light was about to turn red against him and the special interrogatory finding him guilty of contributory negligence as well as the jury verdict are well supported and not against the manifest weight of the evidence and are not the result of passion and prejudice.

■■ We have examined the record carefully and although there is some contradiction in the testimony of witnesses we find that the jury was correctly instructed, including the statutory instruction on the relative rights of pedestrian and motorists. IPI—Civil No. 60.01 (2d ed. 1971).

We cannot agree with the narrow interpretation of the statute

advocated by the plaintiff and hold that the issue of plaintiff's contributory negligence is a question of fact for the jury.

Plaintiff relies on the case of *Little v. Scheu,* 99 Ill. App. 2d 421, 241 N.E.2d 702. The facts in that case were somewhat similar to the facts in this case. In *Little* the plaintiff was crossing Michigan Avenue and Chicago Avenue in the City of Chicago, from west to east, and unquestionably left the west curb of Michigan Avenue on a green light. When he was half way across, the light turned green for north and south traffic. There was an island in the middle of Michigan Avenue on which he could have stayed until he again had the advantage of the green light, but instead he proceeded and was struck by a northbound vehicle. The court said, "from the testimony we think reasonable men might differ as to whether plaintiff was using due care for his own safety by not stopping at the safety island after the light changed instead of leaving a place of safety [the island] and intruding himself into the midst of traffic." In *Little* this court concluded that the issue of plaintiff's contributory negligence was a question of fact for the jury.

In *Vasic v. Chicago Transit Authority,* 33 Ill. App. 2d 11, 180 N.E.2d 347, this court cited *Moran v. Gatz,* 390 Ill. 478, 62 N.E.2d 443 (cited with approval in *Reese v. Buhle,* 16 Ill. App. 2d 13, 147 N.E.2d 431), where the court says:

> "The generally accepted rule is that while a statute such as are ours gives pedestrians the right of way, it does not confer upon them an advantage which necessarily absolves them from guilt of contributory negligence. Each case must be determined from its particular facts. The question of contributory negligence is one which is preeminently for the consideration of a jury. It cannot be defined in exact terms."

In this case we agree with the trial court that reasonable men might differ from the inference which properly might be drawn from the evidence adduced in the case and the question was one for the determination of the jury. Nor can it be said that the jury's verdict was palpably erroneous and that from the evidence an opposite conclusion was clearly evident. The verdict and affirmative answer to the interrogatory was, in our judgment, warranted by the evidence.

■■ In his post-trial motion plaintiff contended that the submitting of a special interrogatory was error. We disagree. Section 65 of the Illinois Civil Practice Act requires a trial judge to submit a special interrogatory when tendered by either party. It reads in part, "the jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact stated to them in writing."

Plaintiff also contends that the verdict and affirmative answer to the

interrogatory was the result of bias and passion. We find nothing on a careful review of the record that could possibly justify such a conclusion.

In view of the foregoing, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DRUCKER AND SULLIVAN, JJ., concur.