LARRY ALBAUGH, Plaintiff-Appellant, *v.* THOMAS A. COOLEY, Defendant-Appellee.

First District (3rd Division)   No. 78-422

Opinion filed May 28, 1980.—Supplemental opinion filed on denial of rehearing October 8, 1980.

SIMON, J., specially concurring.
McNAMARA, J., dissenting.

Dowd, Dowd & Dowd, of Chicago (Michael E. Dowd and Daniel J. Dowd, of counsel), for appellant.

Jacobs, Williams and Montgomery, Ltd., of Chicago (Barry L. Kroll and David A. Novoselsky, of counsel), for appellee.

Mr. JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Larry Albaugh, brought this personal injury action against defendant, Thomas A. Cooley, as a result of an automobile accident. Plaintiff was struck by defendant's automobile while crossing a suburban street in an unmarked crosswalk. The jury returned a verdict in favor of plaintiff for $20,000. However, the jury answered a special interrogatory finding plaintiff guilty of contributory negligence. Judgment was entered in favor of defendant on the jury's answer to the special interrogatory, pursuant to section 65 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 65). We reverse and enter judgment on the general verdict in favor of plaintiff.

The accident occurred on March 15, 1973, at approximately 7:15 p.m. at the intersection of Rohlwing and Campbell Streets in Rolling Meadows, Illinois. At the site of the accident, Rohlwing runs north and south and has one lane of traffic moving in each direction. Campbell runs east to west, but ends at Rohlwing. The intersection is not in a well-lighted area, but there is a street light which arches and extends at an angle over the intersection. At the time of the occurrence, the weather was clear and dry.

Defendant was driving his automobile 25 to 35 m.p.h. in a northerly direction on Rohlwing. The posted speed limit is 35 m.p.h. Plaintiff was walking west on the north side of Campbell. Plaintiff testified that when he arrived at the corner of Campbell and Rohlwing, he waited for several westbound automobiles on Campbell to make a right turn onto Rohlwing. He then looked to his left and saw defendant's automobile one-half block to one block away. Plaintiff began to cross Rohlwing, looking in a westerly direction. When he reached the middle of the street, he looked to his left again and "saw the car was right on top of him." He put his hands up and lunged but was unable to get out of the way of defendant's automobile. The automobile struck him and he landed on the gravel shoulder on the west side of Rohlwing.

A police officer testified that when he arrived at the scene, the plaintiff was "lying on the west side of the roadway at the intersection directly in line with the crosswalk marks." But on cross-examination, the police officer testified that he did not remember whether there was a painted crosswalk at the intersection. The record reflects that there were no painted crosswalk marks.

A woman who was driving an automobile which was stopped at the corner of Campbell and Rohlwing at the time of the accident also testified. She was waiting to make a right turn onto Rohlwing. Her 13-year-old daughter was also in the front seat of the car. The witness testified that as she was traveling west on Campbell, she had seen the plaintiff walking west on Campbell about one-half block from the intersection. She testified that, at the time, plaintiff had a walkie-talkie in his hand "with a long antenna up in the air." She next saw him at the corner, but did not witness the accident. Her 13-year-old daughter testified that she saw plaintiff on the corner, holding what appeared to be a walkie-talkie with its antenna raised toward his head. In another part of her testimony, she states that she saw plaintiff slowly running across Rohlwing before the accident happened. However, she did not see defendant's car before or after the accident and she did not see the defendant's car strike the plaintiff.

Defendant first saw the plaintiff when his automobile was 15 to 20 feet away from him. Defendant testified that his speed at the time was 25 to 30 m.p.h. Defendant swerved to avoid hitting the plaintiff, but the left front fender of the automobile hit him. Defendant testified that there was an automobile facing west on Campbell, waiting to turn onto Rohlwing. Because of the angle of the street, the car's lights were shining in his direction, "causing him trouble seeing" for about 100 feet prior to the impact.

Plaintiff contends that the evidence is insufficient to support a finding of contributory negligence. Defendant contends that "since plaintiff

admitted that he did not know how rapidly the vehicle he saw a half block away was approaching him, and as he had a duty to continue to observe it until he could estimate its speed to determine if it was safe to cross, he was not acting with due care for his own safety when he blindly stepped off the curb into the path of the oncoming vehicle without making any effort to keep it under observation to determine if it was in fact safe to cross." On appeal, defendant does not dispute that plaintiff was in an unmarked crosswalk at the time of the occurrence. We agree with plaintiff that the evidence is insufficient to support a finding of contributory negligence.

■■ When there are no traffic signals at an intersection, the driver of a vehicle must yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway upon which the vehicle is traveling. (Ill. Rev. Stat. 1977, ch. 95½, par. 11—1002.) Of course, while the law gives pedestrians the right-of-way at crosswalks, it does not absolve them from the duty to exercise ordinary care for their own safety. (*Moran v. Gatz* (1945), 390 Ill. 478, 485-86, 62 N.E.2d 443, 446.) But, where the pedestrian has such right-of-way, he should not be held guilty of contributory negligence unless it appears that under the circumstances shown, he saw or should have seen the danger of the approaching vehicle in time to avoid being struck. Absent facts to indicate otherwise, it must be assumed that a pedestrian in a crosswalk did not intentionally expose himself to a known danger. If we do not recognize and follow these basic principles, we would not only deprive the pedestrian of his right-of-way but we would be turning the statute around and conferring the right-of-way on the moving vehicle.

In the present case, there are no facts which demonstrate that plaintiff saw or should have seen the danger of the approaching automobile in time to avoid being struck. Plaintiff looked to the left when he was at the curb and saw defendant's automobile one-half block to one block away. He began to cross the street in the crosswalk. At that time, plaintiff had the right to cross the street and rely on the fact that an automobile driver one-half to one block away on a suburban street would be able to see him crossing the street and permit him to complete the crossing without striking him.

■■ To say that a pedestrian may not cross a suburban street in a crosswalk merely because an automobile is in view at a distance is equivalent to saying that the driver has rights superior to the pedestrian, when the converse is true. Although a pedestrian has a duty to be free from negligence while crossing a street, this does not mean that after having looked for traffic before starting to cross the street, he has a duty to keep a constant lookout for moving vehicles. (*Huston v. Chicago Transit Authority* (1976), 35 Ill. App. 3d 428, 431, 342 N.E.2d 190, 194; see *Fox v.*

*Calhoun* (1975), 34 Ill. App. 3d 336, 341, 340 N.E.2d 125, 128.) He has a right to assume vehicles will yield the right-of-way to him and that they will be operated with reasonable care to avoid hitting him. (See *Fox*, 34 Ill. App. 3d 336, 341, 340 N.E.2d 125, 128; *Petersen v. General Rug & Carpet Cleaners, Inc.* (1947), 333 Ill. App. 47, 58, 77 N.E.2d 58, 64.) Thus, he has a right to a reasonable time and opportunity to complete his crossing, rather than becoming fair game for vehicular traffic. (See *Fox*, 34 Ill. App. 3d 336, 340, 340 N.E.2d 125, 128.) He is not required to constantly turn his head to the left and right.

Defendant emphasizes that the 13-year-old passenger in her mother's automobile testified that she saw plaintiff on the corner holding what appeared to be a walkie-talkie with its antenna raised towards his head. However, there is no evidence that plaintiff was listening to or using the walkie-talkie while crossing the street. Also, there is no evidence that the walkie-talkie distracted the plaintiff's attention in any way. Although defendant testified that he saw plaintiff about two or three feet from the center of the street, he did not testify that plaintiff was using or listening to a walkie-talkie. Defendant merely testified it "appeared that he was holding something in his right hand" before the accident. Certainly, a pedestrian in a crosswalk is not negligent merely because he is holding something in his hand.

Defendant also emphasizes that the 13-year-old witness testified that she saw the plaintiff "slowly running across the street." However, the witness testified that she did not see the accident and she did not see defendant's automobile either before or after the accident. Neither defendant nor plaintiff testified that plaintiff was running slowly or otherwise. Under the circumstances, the statement that plaintiff was "slowly running across the street" cannot support a finding of contributory negligence.

Accordingly, when all of the evidence is viewed in its aspect most favorable to defendant, that evidence so overwhelmingly favors plaintiff on the issue of contributory negligence that no contrary verdict on that issue could ever stand. This conclusion on the issue of contributory negligence leads to the question of whether judgment may be entered on the general verdict notwithstanding the inconsistent answer to the special interrogatory.

On this issue, defendant maintains that the case is governed by section 65 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 65). That statutory section provides that the trial judge must, on request of any party, submit a written special interrogatory to the jury upon any material question of fact, and when the special finding is inconsistent with the general verdict, the former controls the latter. Because it is mandatory that the answer to the special interrogatory controls the general verdict under this section, according to defendant, judgment cannot be entered

on the general verdict if it is inconsistent with the answer to the special interrogatory. (See *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 266, 226 N.E.2d 16, 18; *Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103, 109, 210 N.E.2d 191, 195-96 (Underwood, J., specially concurring); *Starbuck v. Chicago, Rock Island & Pacific R.R. Co.* (1977), 47 Ill. App. 3d 460, 465, 362 N.E.2d 401, 404-05.[1] But see *Leonard v. Pacific Intermountain Express Co.* (1976), 37 Ill. App. 3d 995, 1005, 347 N.E.2d 359, 368; *Zygadlo v. McCarthy* (1974), 17 Ill. App. 3d 454, 458, 308 N.E.2d 167, 170.) However, I believe this statutory section is unconstitutional because it violates the constitutional provision of separation of powers.

In examining this legislative enactment, it is clear that it directs how a court should decide cases and circumscribes the power of a judge to apply the law to the facts and circumstances of the case. (*Cf. Agran v. Checker Taxi Co.* (1952), 412 Ill. 2d 145, 149-50, 105 N.E.2d 713, 715-16.) Specifically, it directs that upon request by a party, the trial judge *must* submit a special interrogatory to the jury, and it legislates that the answer to the special interrogatory *controls* the general verdict, rather than allowing the trial judge to determine whether a special interrogatory should be given if requested and whether it should control under the facts in the case.

Special interrogatories and the judicial power of the court to deal with them as part of the trial of a case date back to the practice of early English common law judges. (See Comment, *Special Findings and General Verdicts*, 18 U. Chi. L. Rev. 321, 322 (1951); Morgan, *A Brief History of Special Verdicts and Special Interrogatories*, 32 Yale L.J. 575, 592 (1923).) Thus, special interrogatories are part of the inherent judicial power of the court. (*Freeman v. Chicago Transit Authority* (1964), 50 Ill. App. 2d 125, 138, 200 N.E.2d 128, 135, *aff'd* (1965), 33 Ill. 2d 103, 210 N.E.2d 191; see also *Norton v. Volzke* (1895),[2] 158 Ill. 402, 409-10, 41 N.E. 1085, 1087.) This is significant here because it is the undisputed duty of the court to protect its inherent judicial power from encroachment by legislative enactments, and thus preserve an independent judiciary department in our government. Under our system of government, the legislature has power to enact laws governing judicial practice *only where*

---

[1] The rationale is that if it is mandatory that the inconsistent answer to the special interrogatory controls the general verdict, then the general verdict is a nullity. Therefore, if the answer to the special interrogatory is set aside, there is no valid verdict upon which to enter judgment. Also, since the statutory section governing special interrogatories provides only for the entry of judgment on the answer to special interrogatory, there is no authority for the entry of judgment on the general verdict if the controlling answer to the special interrogatory is set aside.

[2] In *Norton*, the court stated: "It is also urged as error that the court, on its own motion, submitted two special findings to the jury. ° ° ° The two special findings ° ° ° were entirely proper ° ° ° and *there was no error in the court submitting them to the jury on its own motion. The court has the same right, of its own motion, to submit to a jury special propositions on which to find, as to give instructions.*" (Emphasis added.) 158 Ill. 402, 409-10, 41 N.E. 1085, 1087.

*they do not infringe upon the inherent judicial powers of the court. (Agran, 412 Ill. 145, 149, 105 N.E.2d 713, 715.)* If this principle does not remain inviolate, the constitutional provision for separation of powers will become meaningless.

■ Article II, section 1 of the Constitution of Illinois 1970 provides:

"**Separation of Powers.**

**The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another.**"

In dividing the powers of government into three separate departments, article II, section 1 of the Constitution adheres to a basic principle of constitutional law. Each of the three departments of government is to perform the duties assigned to it, and no department may exercise the powers properly belonging to either of the other two. (*Agran*, 412 Ill. 145, 148, 105 N.E.2d 713, 715.) Article VI, section 1 of the Constitution vests the judicial power in the courts. Although the Constitution does not define judicial power, *all such power is exclusively granted to the courts.* If the power is judicial in character, it necessarily follows that the legislature is expressly prohibited from exercising it. (*People v. Jackson* (1977), 69 Ill. 2d 252, 256, 371 N.E.2d 602, 604; *Agran*, 412 Ill. 145, 149, 105 N.E.2d 713, 715.) Rule-making authority to regulate the trial of cases is a power possessed by the supreme court and not by the legislature.[3] See *Jackson*, 69 Ill. 2d 252, 256-60, 371 N.E.2d 602, 604-06.

The cases of *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 105 N.E.2d 713, and *People v. Jackson* (1977), 69 Ill. 2d 252, 371 N.E.2d 602, illustrate the principle involved here. In *Agran*, the court held that section 50a of the Civil Practice Act, as it existed, was unconstitutional because it was a legislative encroachment upon the inherent judicial power to adjudge, determine and render a judgment. Section 50a required the giving of a five-day notice to every attorney of record prior to *ex parte* action to dismiss a case for want of prosecution. In holding the section unconstitutional, the court stated:

"*The General Assembly has power to enact laws governing judicial practice only where they do not unduly infringe upon the inherent powers of the judiciary.* [Citation.] Were this not true, a basic tenet of our democratic form of government would be destroyed, and the relevant constitutional provisions rendered nugatory. *It is the undisputed duty of the court to protect its judicial powers from encroachment by legislative enactments, and thus preserve an independent judicial department.*

---

[3] For a historical review of the principle that this power belongs to the courts rather than the legislature, see R. Pound, *The Rule-Making Power of the Courts*, 12 A.B.A J. 599 (1926).

* * * Once the court's jurisdiction has been properly invoked and it has entered upon the performance of its purely judicial duties, this legislative rule specifies the procedure to be followed by the court in promulgating its determination. * * * *The legislature cannot direct the judiciary how cases shall be decided.* [Citation.] *It is evident that the rendition of judgments by the courts is one of the most important inherent judicial powers of the courts, and may not be surrounded by legislative rules regulating such determinations.* [Citation.] The challenged statute regulates judicial authority in the performance of a purely judicial act.

Section 50a, being manifestly a rule fashioned by the General Assembly providing a restriction on the power of the courts to render a judgment of dismissal in such cases as this, is clearly unconstitutional. *The promulgation of such a rule infringes upon an inherent power of the judiciary, that of rendering decisions. By our constitution such inherent judicial powers are vested solely in the courts of this State, and any violation thereof is contrary to the express division of governmental powers into three distinct departments.*" (Emphasis added.) 412 Ill. 145, 149-50, 105 N.E.2d 713, 715-16.

In *Jackson,* the court held that a 1975 amendment to the Code of Criminal Procedure relating to the *voir dire* examination of jurors was unconstitutional. In holding the section unconstitutional, the court stated:

"The question is whether Supreme Court Rule 234 or the statute [citation] regulates the method of *voir dire* examination of prospective jurors. This issue resolves itself to whether control of *voir dire* examination is a judicial or legislative function. The controversy thus involves separation of powers between the legislative and judicial branches.

* * *

*Although the Constitution of 1970 does not define judicial power, it is an exclusive grant of all such power to the courts.* [Citations.] *If the power is judicial in character, the legislature is expressly prohibited from exercising it.*

* * *

We conclude that the statute in question is a legislative infringement upon the powers of the judiciary. Accordingly, it is void." (Emphasis added.) (69 Ill. 2d 252, 255-56, 260, 371 N.E.2d 602, 604, 606.)

The power of the trial judge regarding special interrogatories to the jury, like the *voir dire* examination of the jury, *is a power that is judicial in character,* and, therefore, the statutory section in question is likewise a legislative infringement upon the power of the judiciary. *The legislature is expressly prohibited from exercising such power.* Since special

interrogatories are part of the inherent judicial power of the court directly involving the trial of cases, if there is to be a command that the answer to a special interrogatory controls an inconsistent general verdict, it must come from the judiciary and not the legislature.[4] It follows that if there is to be such a command, it must come from a specific supreme court rule in order to be valid.[5] (See *Jackson*, 69 Ill. 2d 252, 255-56, 371 N.E.2d 602, 604.) Thus, the statutory section violates the constitutional provision of separation of powers and is void.[6]

Accordingly, the answer to the special interrogatory does not control the general verdict under the facts in this case.[7] The answer to the special

---

[4] In this regard, we must bear in mind that if such an inherent judicial power involving the trial of cases is permitted to be governed by the legislature in this instance, then that important aspect of the trial of the case will be governed not just by the statutory section as presently written but by any amendments *the legislature may decide* to make to the statutory provision. Thus, an inherent judicial part of the trial of cases would be in the control of the legislature rather than the judiciary, which is clearly an unconstitutional violation of the separation of powers in our system of government.

[5] I note, but in view of my conclusion need not discuss, the fact that if it is mandatory that an answer to a special interrogatory controls an inconsistent general verdict, then in virtually every case, the answer to a special interrogatory can only operate in favor of the defendant in controlling the general verdict. Such a mandatory procedure does not appear to treat the parties to a lawsuit equally. The fact that in virtually every case the answer to a special interrogatory can operate only in favor of the defendant in controlling the general verdict is readily apparent when one is reminded that there cannot be a general verdict and a special verdict in the same case (35 Ill. L. & Prac. *Trial* §331 (1958)); therefore, special interrogatories covering all the issues would not be given with a general verdict, and a special interrogatory would not be given in a single issue case since the general verdict, and the special interrogatory would answer the same single issue. The point is that there cannot be a situation where *all the issues in the case* are answered in favor of the plaintiff by virtue of special interrogatories so that the answers operate in favor of the plaintiff in controlling the general verdict. When special interrogatories cover one or more of several issues, but not all the issues, the answers would not control the verdict even if the answers favor the plaintiff; but the answer or answers would control the general verdict if the answer or answers favor the defendant.

It is also interesting to note that although section 65 of the Civil Practice Act makes it mandatory, upon request of a party, to give a special interrogatory to the jury and that an answer to a special interrogatory which is inconsistent with the general verdict controls the general verdict, there is no like provision in the Code of Criminal Procedure; it would seem that it is just as important to be able to "test" the verdict in a criminal case as in a civil case. (See *Lewis v. Beckman* (1978), 57 Ill. App. 3d 482, 485, 373 N.E.2d 589, 592, as to the purpose of a special interrogatory.) Further, it would seem that any valid constitutional or policy objection to special interrogatories in criminal cases would apply with equal logic in civil cases.

[6] An interesting consequence of declaring a statutory section unconstitutional when the section infringes upon the power and function of the judicial branch of government is demonstrated by *People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 237 N.E.2d 495. In *Stamos*, the court held a statutory appellate provision invalid because "it exceeds the authority granted to the General Assembly by the constitution" as "the constitution has placed responsibility for rules governing appeal in the Supreme Court, and not in the General Assembly." (40 Ill. 2d 62, 66, 237 N.E.2d 495, 498.) This decision operated as an impetus for the re-examination of statutory appellate provisions with the object of retaining the desirable practices by converting them into supreme court rules and by repealing or eliminating the undesirable ones. The project resulted in a substantial revision of the supreme court rules relating to appellate practice and the ultimate nullification or repeal of

interrogatory is set aside because when all the evidence is viewed in its aspect most favorable to defendant, that evidence so overwhelmingly favors plaintiff on the issue of contributory negligence that no contrary verdict on that issue could ever stand. Judgment is, therefore, entered on the general verdict in favor of plaintiff and against defendant notwithstanding the answer to the special interrogatory.

Reversed. Judgment is entered on the general verdict in favor of plaintiff.

Mr. JUSTICE SIMON, specially concurring:

I concur in the first part of Mr. Justice Rizzi's opinion: I agree that viewing all the evidence in the light most favorable to the defendant, it so overwhelmingly favors the plaintiff on the issue of contributory negligence that no finding of contributory negligence could ever stand. The special interrogatory on that issue need never have been propounded. And I concur in the conclusion that in these circumstances it is proper to enter judgment on the general verdict. I see no need, however, to decide whether the special interrogatory statute (Ill. Rev. Stat. 1977, ch. 110, par. 65) is constitutional.

Where a jury's general verdict is inconsistent with its answer to a special interrogatory, the special answer controls, and the court enters judgment accordingly. The special answer is the jury's finding of fact; the general verdict is a mere erroneous conclusion or application of law; the court corrects the jury's legal error and enters judgment as the law demands on the facts as the jury authoritatively found them. If, however, the answer to the special interrogatory is against the manifest weight of the evidence, it is set aside, and the case is retried.

---

statutory provisions relating to appellate practice. (See Harry G. Fins, Preface to *Illinois Appellate Practice Under the New Constitution* (2d ed. 1977).) All rules of appellate procedure are now governed by Supreme Court Rules rather than the legislature. To me, rules of trial procedure which involve the inherent judicial power of the court, such as special interrogatories, should no less be governed by Supreme Court Rules rather than the legislature.

[7] Under the view taken here, since the statutory section in question is void, it is not mandatory to give a special interrogatory merely because it is tendered. Rather, if a special interrogatory in proper form is tendered, it *may be given* by the trial judge as part of his inherent judicial power. It would not be error for the trial judge to refuse a tendered special interrogatory unless a party shows that he was prejudiced by the refusal. If the answer to a special interrogatory is inconsistent with the general verdict, the trial judge may, as part of his inherent judicial power, enter judgment on the general verdict, or enter a judgment n.o.v., or grant a new trial, depending on the evidence, facts and circumstances of the case. Thus, the answer to the special interrogatory would not control the general verdict reached by the jury. Instead, it would be advisory only and could be wholly disregarded by the court in the same manner that a jury's answer on a particular issue is advisory only in a case seeking equitable relief (*Fisher v. Burgiel* (1943), 382 Ill. 42, 54, 46 N.E.2d 380, 386; *Sidwell v. Sidwell* (1975), 28 Ill. App. 3d 580, 585, 382 N.E.2d 595, 599).

Here, however, not only is the answer against the manifest weight, but the evidence to the contrary is so overwhelming that no such answer could ever stand. Of course, if the evidence on all issues necessary to a judgment for one party were so overwhelmingly in that party's favor, he would be entitled to judgment notwithstanding anything the jury might have said. But that is not the case here. The evidence on issues other than contributory negligence (such as the defendant's negligence, proximate cause, and damages) would support a verdict for either side. The plaintiff can have judgment only on the strength of the general verdict in his favor. The question is, can the plaintiff rely on that verdict, or has the inconsistent special answer so impeached it as to nullify it and necessitate a new trial? The argument for a new trial is that the inconsistency shows the jury was confused and untrustworthy.

The weight of authority, at least in this district, is that in such a case it is proper to enter judgment on the general verdict—or to reach the same result by regarding that verdict as establishing all facts necessary to sustain it except those determined by the special answer, and then to enter judgment as the facts demand.

This was suggested in *Kirby v. Swedberg* (1969), 117 Ill. App. 2d 217, 253 N.E.2d 699, and is the holding of *Zygadlo v. McCarthy* (1974), 17 Ill. App. 3d 454, 308 N.E.2d 167, and *Leonard v. Pacific Intermountain Express Co.* (1976), 37 Ill. App. 3d 995, 347 N.E.2d 359. In those cases, the court stated that while if the special answer were merely against the manifest weight of the evidence, a new trial would be required, yet if no such answer could ever stand, judgment could be entered on the general verdict. These cases were expressly disapproved in *Starbuck v. Chicago, Rock Island & Pacific R.R. Co.* (1977), 47 Ill. App. 3d 460, 362 N.E.2d 401. *Starbuck*, however, blurs the distinction between manifest weight and overwhelming weight. Moreover, *Starbuck* appears to say that its result is compelled by *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 226 N.E.2d 16. But *Borries* concerned a special answer that was supported by the evidence. The trial judge there ordered a new trial on the theory that the jury must have been confused; the supreme court reversed, reiterating the rule that judgment should be entered on the special answer. I do not see how *Borries* can be regarded as instructing us to play safe by ordering new trials whenever the jury seems suspect.

Recent decisions in two other closely related situations also discredit the confusion theory, the assumption that a jury which erred in answering a special interrogatory probably erred in the general verdict as well. In *Brock v. Winton* (1980), 82 Ill. App. 3d 1010, 403 N.E.2d 690, we held that where a special answer *consistent* with the general verdict must be set aside as unsupported by the evidence, that does not impeach the general

verdict; although a jury errs in answering a special interrogatory, their general verdict is sustained if it is supported by the evidence, that is if there is sufficient evidence on issues other than the one raised by the interrogatory to justify the verdict. And, in *Ervin v. Neil* (1980), 81 Ill. App. 3d 5, 400 N.E.2d 667, the court suggested that where a jury to which no special interrogatory had been posed volunteered a special finding inconsistent with the general verdict, the special finding should be ignored, and judgment entered on the general verdict—although the jury's response was no less revealing of its state of mind than a requested answer would have been.

Finally, a third recent case, *Lesperance v. Wolff* (1979), 79 Ill. App. 3d 136, 398 N.E.2d 360, seems to approve the *Zygadlo* rule I feel we should follow.

The idea that it is improper to enter judgment on the general verdict because that verdict is rendered a "nullity" when it is inconsistent with the special answer is argument by epithet. The characterization of the general verdict as a nullity has no roots in established legal thought, or in the customary expression of the rule that the special controls the general. Stripped of the mediating epithet, the reasoning is that if a general verdict *seldom* controls, it can *never* do so. Such a statement is not logical.

The interrogatory statute does not, therefore, prevent us from entering judgment on the general verdict in this case. Moreover, it is pertinent to observe that the rule that a special answer controls over an inconsistent general verdict—the only statutory provision with even indirect relevance to this case—was well established at common law; and virtually all the States, with or without statutes on the subject, adhere to it. (See *Borries*; 27 R.C.L. *Verdict* §53 (1920); see generally Clementson, *Special Verdicts and Findings By Juries* (1905).) Striking down the Illinois statute which simply codifies this rule will not, therefore, change the rule or solve our problem, but will leave us more or less where we started, grappling with the problem of a special answer unsupported by the evidence. I see no reason in this case for deciding whether such a statute is constitutional.

Mr. JUSTICE McNAMARA, dissenting:

I respectfully dissent from the conclusion of the majority that judgment should be entered on the general verdict in favor of plaintiff notwithstanding the jury's answer to a special interrogatory finding plaintiff guilty of contributory negligence. The majority finds that when all the evidence is viewed in its aspect most favorable to defendant, it so overwhelmingly favors plaintiff on the issue of contributory negligence that no contrary verdict could ever stand. I believe there was sufficient

evidence to support the special interrogatory and answer, and thus the trial court properly entered judgment in favor of defendant in accordance with the special finding.

Where an answer to a special interrogatory is inconsistent with the general verdict, the special finding of fact controls the general verdict. (Ill. Rev. Stat. 1977, ch. 110, par. 65; *Zygadlo v. McCarthy* (1974), 17 Ill. App. 3d 454, 308 N.E.2d 167.) The trial court is bound by the jury's answer to the special interrogatory unless it is not supported by substantial evidence or unless the determination is contrary to the manifest weight of the evidence. (*Mathis v. Burlington Northern, Inc.* (1978), 67 Ill. App. 3d 1009, 385 N.E.2d 780; *Zygadlo v. McCarthy.*) On review, a court should not disturb a judgment entered on an answer to a special interrogatory unless the special finding is "palpably erroneous and wholly unwarranted from the manifest weight of the evidence." (*Sandquist v. Kefalopoulos* (1977), 49 Ill. App. 3d 456, 459, 364 N.E.2d 475.) Courts are not free to reweigh the evidence and set aside a jury verdict merely because a jury could have reached contrary conclusions or because judges believe that other results are more reasonable. *Larson v. Fell* (1965), 55 Ill. App. 2d 418, 204 N.E.2d 475; see also *DePaepe v. Walter* (1979), 68 Ill. App. 3d 757, 386 N.E.2d 875.

There were no traffic signals at the site of the accident. The Illinois Vehicle Code in effect at the time of the occurrence provided, in relevant part, as follows:

> "When traffic control signals are not in place or not in operation the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway *within a crosswalk* * * * ." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 95½, par. 11—1002(a).)

As the majority correctly indicates, this statutory provision giving a pedestrian the right-of-way does not absolve the pedestrian from the duty to use ordinary care for his own safety in crossing at a crosswalk. (*Sandquist v. Kefalopoulos.*) A pedestrian does not have an absolute right-of-way and in crossing a street, must make reasonable use of all his senses to observe impending danger. *Moran v. Gatz* (1945), 390 Ill. 478, 62 N.E.2d 443; *Larson v. Fell.*

Contrary to the majority's position, I believe there was ample evidence from which a jury could decide that plaintiff saw or should have seen the impending danger of defendant's advancing vehicle in time to avoid the collision. The accident occurred on a dark evening, at a poorly lighted "T" intersection at Rohlwing and Campbell streets. Rohlwing, which runs north and south, is the through street; Campbell, which runs east and west, ends at Rohlwing. Plaintiff testified that upon arriving at the corner, he waited for several automobiles traveling west on Campbell to

turn right onto Rohlwing. He then looked to his left (south) and saw defendant's automobile one-half to one block away. Plaintiff began to cross Rohlwing, and did not look again to his left until reaching the middle of the roadway. At that time, plaintiff saw defendant's automobile very close to him, and "lunged" in an effort to avoid the vehicle. Plaintiff made no judgment as to the speed of defendant's vehicle, but he knew that the speed limit on Rohlwing was 30 m.p.h. and that Rohlwing traffic did not have a stop sign at Campbell.

Defendant testified that he was driving his automobile north on Rohlwing at a speed of 25 to 30 m.p.h. with his headlights shining. He first saw plaintiff when the latter was standing 15 to 20 feet from the automobile. One eyewitness testified that she observed plaintiff slowly running across the street prior to the accident.

Plaintiff also stated that he entered the roadway within a painted crosswalk. A photograph of the site, however, revealed no crosswalk lines. Moreover, defendant and another witness both testified that there were no painted crosswalk lines.

Another portion of plaintiff's testimony was refuted. Plaintiff recounted that when he was approximately 1½ blocks from Rohlwing, he placed the walkie-talkie unit he was testing into his rear pocket and did not later remove it. Two eyewitnesses, however, testified that they observed plaintiff near the corner of Rohlwing and Campbell carrying a walkie-talkie device with a long raised antenna. One witness related that plaintiff was standing at the edge of the roadway holding the unit towards his head, and that it appeared he was talking to someone. Defendant also saw plaintiff holding something in his right hand just before the occurrence.

The evidence adduced raised an issue of fact as to whether plaintiff kept an adequate lookout or made reasonable use of his senses to observe the imminent danger created by the approaching vehicle. The jury was entitled to conclude that by continuing to cross the poorly lighted intersection without again looking at the vehicle's position or judging its speed, plaintiff was not in the exercise of due care for his own safety. Moreover, based on the disputed evidence, the jury could have concluded that plaintiff's attention was distracted by his use of the walkie-talkie. Whether a pedestrian has been guilty of contributory negligence is a question which is preeminently for the jury's consideration. (*Moran v. Gatz.*) As reasonable persons might differ on the inferences to be drawn from the evidence presented here, the issue whether plaintiff exercised due care was properly one for the jury's determination. See *Drzewiecki v. McCaskill* (1976), 41 Ill. App. 3d 627, 354 N.E.2d 144.

The majority suggests that once a pedestrian begins to cross the street after having looked for traffic he has no duty to keep a constant lookout

for moving vehicles, and further, has a right to assume vehicles will yield the right-of-way and will be operated with reasonable care to avoid striking him. These principles, however, were enunciated in situations in which a pedestrian entered the intersection, within or near a marked crosswalk, with a green light in his favor. (See *Huston v. Chicago Transit Authority* (1976), 35 Ill. App. 3d 428, 342 N.E.2d 190; *Fox v. Calhoun* (1975), 34 Ill. App. 3d 336, 340 N.E.2d 125; *Petersen v. General Rug & Carpet Cleaners, Inc.* (1947), 333 Ill. App. 47, 77 N.E.2d 58.) In the present case, the intersection at which the accident occurred had no traffic light and no painted crosswalk marks. Moreover, there was no evidence introduced to demonstrate clearly that plaintiff was even within a crosswalk. If plaintiff had been within a crosswalk, that would be evidence of due care, but would not be conclusive on the issue of his freedom from contributory negligence. (*Larson v. Fell.*) Under these facts and circumstances, whether plaintiff's conduct constituted contributory negligence was properly a question for the jury's determination.

I am not persuaded that the jury's answer to the special interrogatory was not supported by substantial evidence or was against the manifest weight of the evidence. Further, I cannot say that the evidence so overwhelmingly favors plaintiff on the issue of contributory negligence that no contrary verdict could ever stand. Accordingly, I believe the trial court properly entered judgment for defendant in accordance with the special interrogatory.

Turning to an issue not addressed by the parties, I must also respectfully dissent from Justice Rizzi's conclusion that section 65 of the Civil Practice Act is unconstitutional as violative of the constitutional provision of separation of powers. I do not agree that the legislative enactment constitutes an unconstitutional encroachment upon the power of the judiciary.

In general, it is the duty of a court to sustain legislation wherever possible and to resolve all doubts in favor of its validity. (*Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 105 N.E.2d 713.) Of course, a court has the duty to protect its judicial powers from encroachment by legislative enactments, and thus preserve an independent judicial department. (*Agran v. Checker Taxi Co.*; *People v. Brumfield* (1977), 51 Ill. App. 3d 637, 366 N.E.2d 1130.) Yet the framers of the Illinois Constitution of 1970 and our supreme court have recognized the existence of concurrent judicial and legislative rule-making authority. (See *People v. Capoldi* (1967), 37 Ill. 2d 11, 225 N.E.2d 634; *People v. Brumfield.*) And our supreme court has had occasion to invalidate some legislative enactments which were deemed to encroach upon the exercise of inherent judicial power. In *Agran v. Checker Taxi Co.*, the challenged

statute prohibited *ex parte* action to dismiss a case for want of prosecution until every attorney of record had been notified by the clerk of the court at least five days prior to the entry of such order. In finding the statute unconstitutional, the court reasoned that the rule infringed upon the inherent judicial power to render decisions inasmuch as it restricted the court's power to render a judgment of dismissal. In *People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 237 N.E.2d 495, the supreme court invalidated a legislative enactment governing admission to bail which was in conflict with a supreme court rule. The enactment was held unconstitutional because it intruded upon the power to establish rules regulating appeals. In *People v. Jackson* (1977), 69 Ill. 2d 252, 371 N.E.2d 602, the supreme court addressed the issue whether its rule or a conflicting statutory provision regulated the conduct of *voir dire* examination of prospective jurors. The court found the statute in question to be void, reasoning that the supreme court was vested with general administrative and supervisory authority over courts, and that the statute infringed upon the judiciary's powers.

Section 65 of the Civil Practice Act, however, does not regulate a matter of mere court procedure, administration, or efficiency. Likewise, there is no conflicting supreme court rule which must be reconciled with section 65. Section 65 reads as follows:

"Unless the nature of the case requires otherwise, the jury shall render a general verdict. The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact stated to them in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions. Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law. When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may render judgment accordingly." Ill. Rev. Stat. 1977, ch. 110, par. 65.

Section 65 relates principally to a litigant's substantive right to have questions of ultimate fact determined by a jury. The function of special interrogatories is to require the jury's determination as to one or more specific issues of ultimate fact and to operate as a check upon the jury's deliberations. In essence, special interrogatories are used to test the general verdict against the jury's conclusions as to the ultimate controlling facts. *Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468.

Perhaps most importantly, section 65 does not restrict the court's inherent authority to render judgment. I do not believe that section 65 wholly negates the court's power to determine whether the general

verdict or special finding should prevail. While the statute authorizes the entry of judgment upon the special finding, it is couched in permissive language. (See *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 226 N.E.2d 16.) Judicial construction of this statute has established that the special finding of fact has no binding effect where the trial court concludes it is unsupported by substantial evidence or is contrary to the manifest weight of the evidence. (*Zygadlo v. McCarthy* (1974), 17 Ill. App. 3d 454, 308 N.E.2d 167.) This power to review the special finding is analogous to the court's function in determining whether a general verdict is against the manifest weight of the evidence. *Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103, 210 N.E.2d 191.

Justice Rizzi correctly indicates that the power of the court to submit and deal with special interrogatories evolved from the common law. In fact, the generally prevailing rule is that, even in the absence of an express statutory provision, an inconsistent special finding controls a general verdict. (See *Borries v. Z. Frank, Inc.*) The rationale underlying such rule is that the jury is presumed to understand more clearly a particularized special interrogatory on which its attention has been focused than a composite of all questions in the case. (*Kirby v. Swedberg* (1969), 117 Ill. App. 2d 217, 253 N.E.2d 699.) In essence, section 65 merely codifies a practice which existed at common law. Absent section 65 or a supreme court rule, common law would still permit a special finding to prevail. Consequently, as Justice Simon points out, even if this statutory provision is held to be unconstitutional, a court would still be forced to deal with the problem of a special finding of fact which is inconsistent with the general verdict.

For the foregoing reasons, I would hold that section 65 does not impermissibly encroach upon inherent judicial power in violation of the separation-of-powers doctrine, and therefore is constitutional.


SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE RIZZI delivered this supplemental opinion:

Defendant filed a petition for rehearing which was denied this day by separate order. In the petition, defendant claims that I should not have considered the constitutionality of section 65 of the Civil Practice Act because, according to defendant, the constitutionality of the statute was not raised by the parties. I disagree.

It is the undisputed duty of the court to protect its inherent judicial power from encroachment by legislative enactment and thus preserve an independent judicial department in our government. (*Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149, 105 N.E.2d 713, 715.) Since the court has

the duty to protect its own inherent judicial power, the parties obviously cannot by waiver or even by agreement preclude the court from exercising this duty once the legislative enactment is properly before the court and a determination of the constitutionality of the enactment is essential to a proper determination of the issues before the court.

Here, defendant invoked the authority of section 65 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 65). Section 65 expressly provides that when the special finding of fact is inconsistent with the general verdict, "the former controls the latter." The word "controls" requires no interpretation. Plainly, it means that judgment must be entered on the answer to the special interrogatory and that judgment cannot be entered on the general verdict; if judgment is entered on the general verdict, then the general verdict would control the answer to the special interrogatory. The latter is manifestly repugnant to the express language of the statute. True, section 65 also states, "and the court *may* enter judgment accordingly." But this can only mean that judgment may be entered on the answer to the special interrogatory or no judgment can be entered and a new trial must be granted. If it were otherwise, the general verdict would control the answer to the special interrogatory.

This analysis of the express language of section 65 comports with what is stated by Mr. Justice Underwood in *Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103, 109, 210 N.E.2d 191, 195-96 (Underwood, J., specially concurring):

> "I would grant a new trial because, once the special finding is set aside, there remains no verdict upon which judgment can be entered.
>
> That a jury's special finding of fact controls an inconsistent general verdict is established law in this State. * * * In such cases the former is the verdict of the jury and judgment may be entered thereon; the latter is a nullity. * * * This renders the inconsistent general verdict of no force and effect whatsoever even though the special finding is subsequently vacated. * * * Once the special finding has been invalidated, a new trial must necessarily result, since, the inconsistent general verdict being a nullity, there then is no verdict before the court upon which it may act."

Mr. Justice Underwood's reasoning is applicable here if section 65 is valid. The appellate court cases which hold that a judgment may be entered on the general verdict if the answer to the special interrogatory is set aside disregard the plain language of the statute by having the general verdict control the answer to the special interrogatory.

Significantly, in the present case the defendant adopted the cases which accept the rationale of Mr. Justice Underwood in *Freeman*, and argued that as a result of section 65 this court had no authority to enter

judgment on the general verdict. Thus, once the majority of this court decided that the answer to the special interrogatory had to be set aside and that judgment should be entered on the general verdict, we either had to give effect to a legislative enactment which encroached upon our inherent judicial power or exercise our undisputed judicial duty to protect this power from encroachment. At that time, a determination of the validity and constitutionality of the statute became essential to a proper determination of the issues before the court. At the same time, this court had the right, and indeed the duty, to consider the constitutionality of the statute.

In his petition for rehearing, defendant also claims that the case should be remanded so that the trial judge may exercise "his discretion to decide what effect should be given to the general verdict," and that the case should be remanded so that the defendant may now file a post-trial motion. Defendant does not make reference to any supposed error he may raise based upon this record or the trial. Supreme Court Rule 366 provides that a reviewing court may draw inferences of fact, give any judgment, make any order, and grant any relief that the case may require. (Ill. Rev. Stat. 1979, ch. 110A, par. 366.) Moreover, the appellate court may exercise such original jurisdiction as may be necessary to the complete determination of any cause on review. (Ill. Rev. Stat. 1979, ch. 37, par. 32.1.) In the instant case, the majority of this court thoroughly examined and reviewed the record and concluded that this case should not be remanded since no useful purpose would be served, there being no presumption that the facts or the evidence will appear other or different at another trial, and that the general verdict is sufficiently supported by the evidence. (*Bee Jay's Truck Stop, Inc. v. Department of Revenue* (1980), 86 Ill. App. 3d 7, 13, 407 N.E.2d 755, 760; *Prill v. City of Chicago* (1942), 317 Ill. App. 202, 215, 46 N.E.2d 119, 124.) On this point, an example of a case in which the appellate court set aside a special finding and entered judgment on the general verdict, without remandment, is *Walls v. Hofbauer* (1977), 45 Ill. App. 3d 394, 359 N.E.2d 1037. Also see *Pedrick v. Peoria & Eastern R. R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, where judgment in a jury trial was reversed without remandment, although the parties against whom the judgment was finally entered in the reviewing court had not filed post-trial motions because judgment had been entered in their favor in the trial court. I therefore find no merit in defendant's contention.

In addition, in *Horvath v. Loesch* (1980), 87 Ill. App. 3d 615, 620, 410 N.E.2d 154, 158, the court cited the present case with respect to the constitutional issue. The court stated that "Supreme Court Rule 1, not discussed in *Albaugh*, explicitly adopts the Civil Practice Act where not

contrary to the Supreme Court Rules." (*Horvath*, 87 Ill. App. 3d 615, 620, 410 N.E.2d 154, 158.) Supreme Court Rule 1 provides:

> "General rules apply to both civil and criminal proceedings. The rules on proceedings in the trial court, together with the Civil Practice Act and the Code of Criminal Procedure, govern all proceedings in the trial court * * *." Ill. Rev. Stat. 1979, ch. 110A, par. 1.

To the extent that *Horvath* may suggest that the supreme court has "adopted" all the provisions of the Civil Practice Act and the Code of Criminal Procedure as Supreme Court Rules or that all sections in those legislative enactments are constitutionally approved by the supreme court, I disagree. If the former is true, it would mean that any amendments made by the legislature to the Civil Practice Act or the Code of Criminal Procedure would be Supreme Court Rules. Thus, it would amount to an abdication of the rule-making power by the supreme court and a wrongful delegation of that power to the legislature. Moreover, how could the supreme court "adopt" the legislative amendments it has not yet seen? Also, Supreme Court Rule 1 existed at the time *People ·v. Jackson* (1977), 69 Ill. 2d 252, 371 N.E.2d 602, and *People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 237 N.E.2d 495, were decided. In both cases, the supreme court held sections of the Code of Criminal Procedure unconstitutional as being an encroachment by the legislature upon the power of the judiciary.

To me, Supreme Court Rule 1 merely establishes for trial court proceedings the same standard for determining the applicability of the Supreme Court Rules as appears in section 1 of the Civil Practice Act. (See Ill. Ann. Stat., ch. 110A, par. 1, Committee Comments (Smith-Hurd 1979).) In other words, both the Supreme Court Rules and the Civil Practice Act are applicable to trial court proceedings in the same kinds of actions. But this does not mean that the legislature can thereby encroach upon the judicial power of the court. Accordingly, I do not believe that Supreme Court Rule 1 is applicable to the constitutional question involved in this case.

I adhere to my original opinion.