CEIL ANN FARMAR, Plaintiff-Appellee, Cross-Appellant, *v.* RICHARD F. CRANE *et al.,* Defendants.—(RICHARD F. CRANE, Defendant-Appellant; FORD MOTOR COMPANY *et al.,* Defendants, Cross-Appellees.)

(No. 60134;

First District (5th Division)—September 26, 1975.

Menk, Johnson and Bishop, of Chicago (John Cadwalader Menk, of counsel), for appellant Richard Crane.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (Fredric J. Grossman and James T. Ferrini, of counsel), for appellee Michael R. Shanahan.

Philip H. Corboy and Sidney Z. Karasik, both of Chicago, for appellee Ceil Ann Farmar.

Mr. JUSTICE LORENZ delivered the opinion of the court:

The instant appeal arises from an action to recover damages for the personal injuries plaintiff Ceil Ann Farmar (Farmar) sustained while riding as a passenger in an automobile operated by defendant Richard F. Crane (Crane), which was involved in a collision with an automobile owned and operated by defendant Michael R. Shanahan (Shanahan). The Crane automobile was owned by defendant Ford Motor Company (Ford) and was leased to Crane's employer, defendant Schmerler Ford, Inc. (Schmerler). The court directed verdicts for Ford and Schmerler at the close of plaintiff's evidence and entered judgment for Shanahan but against Crane in accordance with the jury's verdict. Crane appeals from the judgment entered against him in the amount of $235,000 and from the denial of his post-trial motion. He contends that the trial court erred in: (1) not directing a verdict in his favor or not entering judg-

ment notwithstanding the verdict, (2) not granting him a new trial because of alleged errors of the trial court, and (3) not ordering a remittitur.

Farmar cross-appeals from the judgment for Shanahan and the denial of her post-trial motion and from the orders directing verdicts in favor of Ford and Schmerler. She contends that: (1) the trial court erred in directing those verdicts, and (2) the judgment for Shanahan was against the manifest weight of the evidence.

Plaintiff and Dolores Crane, defendant Crane's wife, filed a five-count complaint seeking damages for personal injuries. Plaintiff alleged negligence against Crane, Ford and Schmerler in count I; willful and wanton misconduct against the same defendants in count II; and negligence against Shanahan in count III. Dolores Crane alleged willful and wanton misconduct against her husband, Ford and Schmerler in count IV; and negligence against Shanahan in count V. Before trial, Crane, Ford and Schmerler filed motions for summary judgment regarding count IV as it related to Dolores Crane. The court entered summary judgment on that count for Richard Crane on the basis of inter-spousal immunity and for Ford and Schmerler on the basis of the lack of vicarious liability as a matter of law. Count V was voluntarily dismissed. At the close of plaintiff's case Ford and Schmerler were directed out, after which plaintiff filed a second amended complaint alleging willful and wanton misconduct against Crane in count I and against Shanahan in count II.

The following pertinent evidence was adduced at trial for the plaintiff:

*Defendant Michael R. Shanahan under section 60.*

At about 1 a.m. on Sunday, July 26, 1969, he was driving his new Buick north on Harlem Avenue in Oak Park on his way to a friend's home. Harlem is a four-lane thoroughfare with a speed limit of 30 miles per hour. His headlights were lit; and since the road was wet, his windshield wipers were operating. The traffic was heavy. He was driving at a speed of 20 to 25 miles per hour as he approached the intersection of Pleasant Street. Suddenly, a Ford Thunderbird, which had been traveling south on Harlem, turned left in front of him. He sounded his horn and applied his brakes, but he hit the side of the Thunderbird.

*Michael Cress*

On July 26, 1969, he was walking north on the west side of Harlem. It had been raining and the streets were wet. As he reached the northwest corner of Harlem and Pleasant, he heard a horn behind him. He looked back and observed a Thunderbird turning left onto Pleasant and saw a Buick, which had been traveling at the same speed as the other northbound vehicles, collide with it.

*Harvey Magargal*

He had been driving west on Pleasant and was preparing to turn right onto Harlem. He observed the northbound traffic for three to five minutes. The cars were between 5 and 15 feet apart and he was afraid to execute his turn. He did not see the Buick or the collision. However, one of the cars hit his auto.

*Joseph Farmar*

He is plaintiff's husband. On the evening of July 25, 1969, he and his wife held a dinner party which their friends, the Cranes, attended. When the Farmars informed the Cranes that they were planning to visit southern Illinois, Crane offered to let them drive their second automobile, which was air-conditioned. After the party, plaintiff accompanied the Cranes in their car to pick up their second car. Later, he saw plaintiff in the hospital. About a year after the occurrence, his wife purchased a used air-conditioned automobile from Crane.

*James Fry*

He is the Oak Park police officer who investigated the incident. Three automobiles were involved: a Buick belonging to Shanahan, a Thunderbird belonging to Crane, and a Pontiac belonging to Magargal. Magargal's vehicle was facing west on Pleasant, east of Harlem; the rear of the Crane vehicle was against the side of Magargal's vehicle; and Shanahan's vehicle was in the southeast quadrant of the intersection, in the northbound lanes of Harlem. He found debris from the accident in the southeast quadrant of the intersection. Plaintiff was lying on the rear seat of the Thunderbird. The traffic along Harlem was "medium"; visibility was good; the sky was cloudy; and no evidence of skid marks was found in the area. Crane told him that he did not see Shanahan's vehicle before the impact.

*Defendant Richard F. Crane under section 60.*

In July of 1969, he was Schmerler's sales manager. It was not improper for him to attempt to sell cars at social gatherings; but he did not attend the Farmars' party to sell them an air-conditioned auto. At the party, his wife suggested that they loan the Farmars their second car; and he was aware that he might be able to sell them an air-conditioned vehicle.

When they left, plaintiff was riding in the back seat and his wife was riding in the right front passenger's seat. The two women were talking, but they were not disturbing his driving. He proceeded south on Harlem traveling at 25 to 30 miles per hour. He was awake and aware of his surroundings. However, he could not recall whether he had his windshield wipers operating, whether his turn signal was flashing, or whether he applied his brakes before turning. Moreover, his testimony at trial regarding the lack of spray from the wet pavement was impeached by

his testimony during a deposition. Although he was unaware of the traffic moving south on Harlem, he testified that the northbound traffic was not a steady flow. He saw several vehicles proceeding north, but he thought he had enough time to complete his turn. He did not see the vehicle which struck his auto.

*Plaintiff Ceil Ann Farmar*

She is 49 years old. Prior to the collision she was employed by the deputy tax collector of Leyden Township earning about $7800 per year. After the collision she was employed as a real estate saleswoman. At her job with Deltona Corp. she received $17,024 in 1971; * $6,690 in 1972; and $6,026 in 1973.

She has no memory of the dinner party, the ride in Crane's auto, or anything else about the incident. As a result of her injuries, she wore a patch over her right eye for 2½ years. She has continual headaches; she frequently has double vision which makes her dizzy and nauseous; and her eye closes involuntarily. She is unable to read or sleep; she spills her food when she eats and burns herself when she cooks. She has difficulty remembering things and therefore must write everything down. Sometimes she blanks out and does not know what happens to her.

The medical evidence adduced on plaintiff's behalf disclosed that upon admission into the hospital after the accident she was suffering from fractures to various parts of the body, including the skull, chest and pelvic areas; that a paralysis of the muscles leading to the right eye was later diagnosed; that a white discoloration in the right eye is caused by degeneration of that eye; that she suffered a permanent aneurysm which cannot be cured and which carries a potential of death; and that headaches are a permanent recurring disability. The medical evidence further disclosed that plaintiff's eyesight had been normal prior to the incident; that because of the occurrence she suffered permanent damage to the optic nerve of the right eye; that her eye will not direct itself properly; that she had a fear of light because her eye does not react normally to light; that she suffers from dizziness, headaches and nausea; and that her right eyelid does not function normally.

Following this evidence, plaintiff rested her case. The court granted Ford's and Schmerler's motions for directed verdicts expressly finding that there was no just reason for delaying enforcement or appeal; directed a verdict in favor of plaintiff on the issue of her due care; and

---

* The record is inconsistent regarding the amount of plaintiff's income for 1971. Plaintiff's employer stated that the amount was $1724; but in response to a question by defense counsel, who said the amount from the records was $17,024, plaintiff agreed.

permitted plaintiff to amend her complaint. Defendant Crane then presented his defense.

*Dolores Crane*

At dinner, they agreed to loan the Farmars their second car as a gesture of friendship and there was no discussion of the purchase of a car. At the time of the incident, she was talking to plaintiff, who was sitting in the rear seat. She does not recall that her husband was involved in the conversation. She heard the directional signals; she heard no horn; and she noticed no northbound traffic.

The jury returned a verdict for plaintiff on count I against Crane; and for Shanahan on count II of the second amended complaint. In a special interrogatory, the jury found that Crane's conduct was willful and wanton and a proximate cause of the occurrence. The court entered judgment on the verdicts and denied both post-trial motions. Plaintiff's post-trial motion did not address the propriety of the directed verdicts in favor of Ford and Schmerler.

OPINION

We shall first consider Crane's contentions on appeal and then plaintiff's cross-appeal.

I.

Crane first contends that the trial court erred in not directing a verdict in his favor or not entering judgment notwithstanding the verdict. He argues that the evidence does not demonstrate that he was guilty of willful and wanton misconduct, and he asserts that the judgment is against the manifest weight of the evidence.

In *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504, the Illinois Supreme Court established the standard to be applied for directing verdicts and entering judgments *n.o.v.* Verdicts should be directed and judgments *n.o.v.* should be entered only in those cases in which the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based upon that evidence could stand. Here, the evidence supports the jury's verdict and did not justify the court in directing a verdict or in entering judgment *n.o.v.* Indeed, the jury, in a special interrogatory, expressly found that Crane's conduct was willful and wanton and proximately contributed to plaintiff's injuries. Moreover, the jury could properly have determined that the northbound traffic was heavy on Harlem at the time of the incident; that the pavement was wet; and that nonetheless Crane turned into the path of the on-coming traffic. Furthermore, the jury could have concluded that Crane did not have his windshield

wipers operating and that the spray from the wet pavement obstructed his vision.

■■ Crane's extensive reliance upon *Breslin v. Bates*, 14 Ill.App.3d 941, 303 N.E.2d 807, is misplaced. In *Breslin*, not only was there a total lack of evidence demonstrating that the host driver was indifferent to the consequences of his actions, but the guest passenger absolved the driver of all willful and wanton misconduct. However, in the case at bar, the evidence could reasonably have led the jury to find that Crane's action of turning his vehicle under the circumstances confronting him amounted to an utter indifference to or a conscious disregard for the safety of others.

Crane next contends that the trial court erred in not granting him a new trial. He argues that the court: (1) should not have permitted the use of a magnetic blackboard, (2) should not have overruled certain defense objections, (3) should have dismissed Ford and Schmerler prior to trial, and (4) should not have restricted his closing arguments.

■■ Crane argues that the trial court abused its discretion by permitting a magnetic blackboard to be used in a manner which allowed counsel to lead their witnesses. The use of such a blackboard rests in the sound discretion of the trial court. (*Sherman v. City of Springfield*, 111 Ill.App.2d 391, 407, 250 N.E.2d 537, 545.) However, a blackboard may properly be used by the witness to aid his expression of the occurrence. As stated in Annot., 9 A.L.R.2d 1044, 1047 (1950):

> "When a witness testifies to physical conditions or happenings, he may do so diagrammatically as well as verbally. He may represent points and objects by marks or shapes in a drawing, and distances, directions, and movements by lines therein. He may do so while testifying, either by his own hand *or by directions* to *counsel* * * *. The rationale of this entire class of evidence is that the witness is merely using the drawing as a visual or graphical means of expressing himself." (Emphasis added.)

Thus, while we believe it is improper for counsel to lead a witness in his rendition of the accident through a suggestive placement of magnetic cars, the record here does not disclose the degree of impropriety which would constitute reversible error. Counsel stated, in the jury's presence, that the board was not intended as a scale replica of the scene of the incident, and Crane's counsel also occasionally referred to the blackboard. In these circumstances, we do not believe Crane was prejudiced by the use of this visual tool.

Crane also claims that the trial court should have sustained certain of his objections to allegedly leading questions. While it is improper to lead witnesses except on cross-examination, the questions asked on cross-

examination of which Crane complains were not posed by plaintiff's counsel, or were simply insignificant. Crane's claim that the trial court erred in ruling on evidence lacks merit.

Crane next claims that he was prejudiced by the trial court's failure to dismiss Ford and Schmerler from the case before trial. He argues that their presence in the case raised the inference of the availability of great financial resources. We note that neither Ford nor Schmerler moved for summary judgment with regard to plaintiff and that both were directed from the case at the close of plaintiff's evidence. The fact that summary judgment was granted in favor of Ford and Schmerler as against Dolores Crane on the basis of the absence of vicarious liability as a matter of law does not support Crane's position. Dolores Crane, being defendant Crane's wife, was in a totally different situation from that of plaintiff. We do not believe Crane was prejudiced by these circumstances.

Crane further stated that the trial court erred in restricting his final argument. He claims that the court prevented him from arguing to the jury that plaintiff's amended complaint changed her theory of the case with regard to Shanahan. The character and scope of argument to the jury is left very largely to the trial court, and every reasonable presumption must be indulged in that the trial court has performed its duty and properly exercised the discretion vested in it. (*North Chicago Street Ry. Co. v. Cotton*, 140 Ill. 486, 29 N.E. 899.) Counsel was permitted to and did argue vociferously the distinction between negligent conduct and willful and wanton conduct and the applicability of the guest statute. Thus, the alleged limitation of argument here, if in fact there was any, was not an abuse of the court's discretion.

■■ Crane lastly contends that the trial court erred in failing to order a remittitur. He points to the comparatively small ($8000) amount of medical expenses plaintiff incurred and to the increase (assuming the validity of the $17,024 figure) in plaintiff's income in 1971 and argues that the jury's verdict of $235,000 is excessive. However, we note that plaintiff's earnings in 1972 decreased to an amount less than she was making before the collision. Plaintiff's claim for damages was based upon both the extent of her injuries and her pain and suffering. Plaintiff convinced the jury that she had suffered substantial pain and suffering. Both her description of the results of the injuries she sustained and the corresponding medical evidence support her position. Plaintiff's injuries were severe and permanent. The award of damages falls within the province of the trier of fact. (*Lau v. West Towns Bus Co.*, 16 Ill.2d 442, 158 N.E.2d 63.) Here, we cannot say that the court erred in refusing to order a remittitur.

## II.

● 4 Plaintiff has appealed from denial of her post-trial motion and from the orders directing verdicts in favor of Ford and Schmerler. Initially, we note that although the parties have not addressed the issue, a serious question exists regarding whether plaintiff's appeal from those orders may be entertained. They were entered upon defendants' motions in a case involving multiple parties and multiple issues. The directed verdicts terminated Ford's and Schmerler's involvement in the case and contained an express finding that there was no just reason for delaying appeal. In such circumstances, Supreme Court Rule 304(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 304(a)) mandates that the time for filing a notice of appeal runs from the entry of the finding. The orders finally determined the rights of those parties and they were appealable. Pursuant to the time limitations in Supreme Court 303(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 303(a)), plaintiff should have appealed these orders within 30 days after the entry of the court's finding or within 30 days of the disposition of her post-trial motion relating to those orders. However, plaintiff's notice of appeal from these orders was not filed within 30 days of the entry of the trial court's finding. We, therefore, dismiss plaintiff's appeal relating to the order directing verdicts for Ford and Schmerler.

■■ Plaintiff also contends that the jury's verdict for Shanahan was against the manifest weight of the evidence. We note that plaintiff voluntarily amended her complaint against Shanahan, changing her theory of liability as to him from ordinary negligence to willful and wanton misconduct. Here, the jury was justified in concluding from the evidence that Shanahan's conduct was not willful and wanton. He was operating his vehicle within the posted speed limit; the lights on his vehicle were lit; and his windshield wipers were operating. When confronted with Crane's vehicle turning in front of him, he applied his brakes and sounded his horn. In these circumstances, the jury could properly have determined that plaintiff did not establish that the conduct of Shanahan was willful and wanton. This verdict was not against the manifest weight of the evidence.

For these reasons the judgment in favor of the plaintiff and against defendant Crane is affirmed. Likewise, the judgment in favor of defendant Shanahan and against plaintiff is affirmed. The cross-appeal of the plaintiff as to the order directing verdicts against plaintiff in favor of defendants Ford Motor Company and Schmerler Ford, Inc., is dismissed.

Judgments affirmed.

Cross-appeal dismissed.

DRUCKER and SULLIVAN, JJ., concur.