JOSEFA MALPICA, Plaintiff-Appellant, *v.* DAVID SEBASTIAN, Defendant-Appellee.

First District (1st Division)    No. 80-2501

Opinion filed August 10, 1981.

Alan M. Freedman and Bruce H. Bornstein, both of Freedman & Bornstein, of Chicago, for appellant.

Jacobs, Williams and Montgomery, Ltd., of Chicago (John D. Daniels and Barry L. Kroll, of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

In this personal injury action brought by Josefa Malpica (plaintiff) against David Sebastian (defendant), a jury returned a verdict for defendant and a special interrogatory finding plaintiff guilty of contributory negligence. Plaintiff appeals.

Plaintiff, a pedestrian, was struck by an automobile. Diversey is an east-west street. Diversey has four traffic lanes. The two outside lanes are used for parking. The two inside lanes carry traffic in both directions. The center of Diversey is marked by a yellow strip.

Rockwell runs north and south. It is 2600 west. Western Avenue is approximately two blocks east. California is to the west of Rockwell at 2800. About one-half a block west of Rockwell there is a railroad viaduct. Diversey dips slightly there and there are ramps to and from the Kennedy Expressway. There are traffic lights at the Kennedy ramps. There are additional traffic lights at the Western Avenue intersection. All of these traffic lights may be seen from the Rockwell intersection.

Rockwell does not cross Diversey in a straight line. The portion of Rockwell running north from Diversey is east of the portion of Rockwell running south from the south line of Diversey. There is a marked crosswalk over Diversey. It runs at a slight diagonal from the west line of Rockwell northeast to the north side of Diversey. There is no safety island at the intersection. Public transportation heading east stops on the southwest corner of Diversey and Rockwell.

Plaintiff testified through an interpreter. On Sunday, December 29, 1974, she left her work at O'Hare Airport at 5 p.m. She traveled by public transportation to the corner of Rockwell and Diversey. About 7:30 or 8 p.m., she alighted from an east-bound Diversey bus on the southwest corner of the Rockwell intersection. She stopped and looked west to her left. She saw cars stopped at the traffic lights near the expressway. Also she saw one car "just passing" in an easterly direction. When there was no traffic coming, she crossed within the marked crosswalk until she came to the yellow central strip of Diversey. She waited here for about two minutes for cars to pass moving west on Diversey toward California. During this time she looked east toward Western Avenue. Several or "many" cars passed her going west. These cars were "about three feet" from her. She then saw another car about half a block away going to the west. She described this car as "coming very fast." She added, "I noticed

like zig zag on the lights and then I was hit." She could not say for sure but she believed the front of the car struck her. She said, "* * * everything happened so fast, I cannot remember anything else after that." In her discovery deposition, she had stated she could not tell if this oncoming car "swerved or not." She testified she knew when she started to cross the street she would have to stop in the middle of the street but, "I did that every day."

Defendant testified he left his work that night and went to visit a friend who worked at the Belmont Bowl. Coming from work in Skokie, defendant drove on the Kennedy Expressway to the California exit ramp. Then he drove south to Diversey. At Diversey he made a left turn and proceeded to drive east. He was then under the impression that Belmont crossed Diversey and he was attempting to locate the intersection. About 8 p.m. he approached the Rockwell intersection. His speed was 20 miles per hour. The road was wet and there was a slight rain or mist. He operated his windshield wipers at intervals. The record shows the intersection was well lighted by street lights. Defendant did not see the plaintiff at any time. Upon entering the intersection he heard a noise "right on my left hand side." He stopped his car just past the east curb of Rockwell and parked on the south side of Diversey. He left his car and walked back. He found plaintiff lying in the intersection slightly west of the center of the southern portion of Rockwell and entirely north of the yellow median line on Diversey. He was unable to speak to her because she spoke Spanish.

Defendant and three other persons waited for the police and later went to the hospital. The only damage defendant found on his automobile was a crack at the base of the rear view mirror on the left side. There were no cars in front of defendant. He did not note any westbound traffic on Diversey.

In this court plaintiff-contends the trial court should have directed a verdict against defendant on the issue of liability; plaintiff should have a new trial because the jury's verdict and answer to the interrogatory were against the manifest weight of the evidence; there was no evidence of contributory negligence to justify the instructions and the special interrogatory on that issue and the trial court should have held a *voir dire* hearing before ruling that the answer of defendant to plaintiff's amended complaint was not a judicial admission.

## I

Whether the trial court should have directed a verdict against defendant on liability and also in favor of plaintiff on contributory negligence is to be decided under the *Pedrick*-standard. That is, the trial judge here should have directed a verdict or entered judgment *n.o.v.* if all

of the evidence when viewed in its aspect most favorable to defendant so overwhelmingly favors plaintiff that no contrary verdict on the evidence could ever stand. (See *Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 309, 356 N.E.2d 32, citing *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) On the other hand, the trial judge should have set aside the verdict of the jury and the answer to the special interrogatory only if the verdict and answer were contrary to the manifest weight of the evidence. *Mizowek*, 64 Ill. 2d 303, 310.

Plaintiff answers the questions raised in these first two issues by citing the pertinent section of the Motor Vehicle Act (Ill. Rev. Stat. 1979, ch. 95½, par. 11—1002) which provides, "the driver of a vehicle shall yield the right-of-way, * * * to a pedestrian crossing the roadway within a crosswalk * * *." However, it has been repeatedly held that this enactment "does not absolve a pedestrian from the duty to use ordinary care for his own safety in crossing at the crosswalk." *Sandquist v. Kefalopoulos* (1977), 49 Ill. App. 3d 456, 460, 364 N.E.2d 475, and cases there cited.

This requirement of proof of due care by a pedestrian in a crosswalk has been the law of Illinois for some time. In *Zeller v. Durham* (1962), 33 Ill. App. 2d 273, 279, 179 N.E.2d 34, the court pointed out that in a situation involving a pedestrian in a crosswalk injured by a motorist there is an issue of fact as to whether the motorist was guilty of negligence (citing *Moran v. Gatz* (1945), 390 Ill. 478, 62 N.E.2d 443), and there is a corresponding issue arising from the duty of the pedestrian to conduct himself so as to be freed from contributory negligence.

In the instant case, the testimony of plaintiff leaves much to be desired. She testified she remained standing close to the center line of Diversey for two minutes. Defendant testified he did not see plaintiff standing there until he heard the noise of physical contact with her. Defendant testified he was driving in an easterly direction. Plaintiff testified she was struck by a car coming from the east, going west. The testimony of plaintiff is weakened by her own admission that the occurrence "happened so fast" that she could not remember anything else after she saw a car about half a block away going west.

An issue also appears on the time element here. Plaintiff testified she left her work at 5 o'clock and the occurrence took place about 7:30 or 8 o'clock. Defendant testified his car was being driven east by him some time after 8 o'clock.

On the question of contributory negligence, not all reasonable people would agree that plaintiff exercised due care when she crossed the street to the half-way mark despite the fact that traffic was approaching from the east. By doing so, and by standing in the middle of a busy street without the protection of a safety island, plaintiff knowingly assumed a position of peril. In addition, plaintiff stated she observed a vehicle

coming from the east in a zig-zag manner. This car was more than half a block away when she noted it, yet she held her position in the center of the street and answered, "I don't know what to say" when asked why she did not step back to avoid the growing peril of the car approaching rapidly from the east. Also, in her deposition plaintiff testified she could not tell if this car swerved.

In addition, in the instant case the answer to the special interrogatory that plaintiff was contributorily negligent is not inconsistent with the general verdict. In that regard, the case at bar is to be contrasted with *Albaugh v. Cooley* (1980), 88 Ill. App. 3d 320, 410 N.E.2d 873. There, the jury found plaintiff guilty of contributory negligence by its answer to the special interrogatory but returned an inconsistent verdict in favor of plaintiff. We note also that in *Albaugh* the supreme court has granted leave to appeal. 82 Ill. 2d 583.

However, the instant case is similar to *Brock v. Winton* (1980), 82 Ill. App. 3d 1010, 403 N.E.2d 690. In *Brock*, as in the case before us, the answer to the special interrogatory was consistent with the general verdict. Therefore, as pointed out in *Brock*, the answer to the special interrogatory is of no consequence. "The real question is whether there is sufficient evidence to support the general verdict." *Brock*, 82 Ill. App. 3d 1010, 1012.

We also find no error in the instructions on contributory negligence given to the jury. As above shown, the evidence clearly presented a question for the jury on this issue. The instructions were all proper in form (Illinois Pattern Jury Instructions, Civil, Nos. 10.04, 11.01, 21.02, 36.01, 60.01 (2d ed. 1971)) and accurately presented this issue to the jury.

■■ Our study of the record impels us to conclude that the able trial judge acted with complete legal propriety when he refused to direct a verdict for plaintiff on the issue of liability and permitted the jury to consider the issue of contributory negligence. From the above analysis it also appears that the trial court acted properly when it denied plaintiff's motion for a new trial. In our opinion, this case presents a classical version of sharply opposing testimony by the litigants. There is a complete dichotomy between the testimony of plaintiff and defendant. We believe the entire record raises simply a question of credibility which it was within the province of the jury to decide. *Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 553, 356 N.E.2d 779.

## II

Counsel for plaintiff cross-examined defendant concerning the direction in which defendant was driving his automobile. The attorney asked defendant if he ever told anyone he was "going west on Diversey at the

time of the occurrence?" Defendant answered, "No, sir." The attorney for plaintiff then stated:

"Can I please have, your Honor, from the court file a copy of the answer that was filed on behalf of the defendant?"

The court and counsel then conferred out of the presence of the jury. The record shows the unverified amended complaint of plaintiff, filed August 11, 1975, alleged in paragraph 5 that defendant was driving, "in a westerly direction." The record also shows an appearance was filed for defendant in the trial court on September 22, 1975, by the attorneys who represent defendant in this court. On September 22, 1975, present counsel for defendant filed an unverified answer which denied the allegations of paragraph 5.

However, on October 10, 1975, with leave of court, an appearance and answer were filed for defendant and also for Fair Lanes Illinois Bowling Co., Inc. (defendant's employer), by attorney Richard F. Mack. Leave to file these matters was obtained upon notice to counsel for plaintiff only. On October 10, 1975, attorney Richard F. Mack filed an unverified answer for both of his purported clients. This answer admitted the allegations in paragraph 5 of the amended complaint. A copy of the answer was mailed only to the attorneys for plaintiff.

Pursuant to notice served by attorney Richard F. Mack on present counsel for defendant and on counsel for plaintiff, on November 26, 1975, the trial court entered an order giving leave to attorney Richard F. Mack "to withdraw as attorney of record for David Sebastian, only." On December 3, 1975, attorney Richard F. Mack filed a notice with service upon counsel for defendant and counsel for plaintiff for the taking of the discovery deposition of the defendant David Sebastian on December 10, 1975. Subsequently, summary judgment was entered in favor of the former defendant Fair Lanes Illinois Bowling Co., Inc.

At the conference both counsel and the court considered the record as above outlined. Counsel for the plaintiff requested a *voir dire* examination of attorney Richard F. Mack. The trial judge stated there was never an actual relationship of client and attorney between defendant and attorney Richard F. Mack. The trial judge described the answer as "boiler plate" and described the document as being filed "without any information and so much so that they [attorney Mack] had to take the deposition of the man they filed the appearance for." The trial judge accordingly ruled that the answer filed by said attorney would not be admitted in evidence and its use would not be permitted in examination of the defendant.

Both counsel and the trial judge then discussed the proper statement which the judge should give the jury, in view of the fact that counsel for

plaintiff had requested a copy of the answer in the presence of the jury. By agreement of counsel the trial judge simply instructed the jury:

> "The court finds upon examination of the court file that there was a document filed to which reference was made but that it does not apply to this particular case."

In this court, counsel for plaintiff renew the contention the trial court should have permitted a *voir dire* examination of attorney Mack.

In our opinion, the ruling of the trial judge was precisely correct. There would be no point to interrupting the proceedings to obtain the presence of attorney Richard F. Mack. Since the record shows not only that attorney Mack withdrew as counsel for the defendant by order of court on November 26, 1975, but also sent notices for the taking of defendant's deposition on December 3, 1975, it is manifest that the purported representation of defendant by attorney Mack was simply erroneous and no such authority ever existed. Actually, that would appear from the record to be the only response that attorney Mack could make if he were present. Furthermore, assuming existence of a lawyer-client relation between defendant and attorney Mack, the latter could not legally testify to conversation with defendant without a waiver by defendant. *Johnson v. Frontier Ford, Inc.* (1979), 68 Ill. App. 3d 315, 318-19, 386 N.E.2d 112.

■■ Plaintiff's brief urges the answer filed by attorney Mack was proper as a judicial admission by defendant. Counsel for defendant urges plaintiff's attorney sought only to use the answer for purposes of impeachment. We need not pass upon this issue. In view of our conclusion that the answer was unauthorized, we find its use as impeachment was not proper and also it did not constitute a valid judicial admission.

For these reasons the judgment appealed from is affirmed.

Judgment affirmed.

CAMPBELL, P. J., and McGLOON, J., concur.