MARIANNE ZITLAW, Plaintiff-Appellant, *v.* JOSEPH WOSZENZYNSKI, Defendant-Appellee.

First District (1st Division)    No. 80-3177

━━━

Opinion filed November 23, 1981.—Rehearing denied December 2, 1981.

Marianne Zitlaw, of Calumet City, for appellant, *pro se.*

Orner, Wasserman & Moore, Ltd., of Chicago (Norton Wasserman and H. Elisabeth Huber, of counsel), for appellee.

JUSTICE GOLDBERG delivered the opinion of the court:

In this action for personal injuries resulting from an automobile collision on March 8, 1977, brought by Marianne Zitlaw (plaintiff) against Joseph Woszenzynski (defendant), a jury returned a verdict in favor of defendant and by its affirmative answer to a special interrogatory found plaintiff guilty of contributory negligence. Plaintiff appeals.

The briefs filed in this court in behalf of plaintiff are pro se. However, with permission of the court, plaintiff's trial attorney presented oral argument for plaintiff.

The unusual length of the record before us arises from the fact that the instant case was consolidated and tried together with another case brought by plaintiff against another person named Giulio Candreva for personal injuries resulting from an automobile collision on January 6, 1973. The former incident has no bearing upon the issue of liability in the case at bar. The former action was dismissed by agreement of the parties.

The accident before us occurred during the morning of March 8, 1977. The evidence shows plaintiff drove her automobile to a store on the east side of Burnham Avenue near 159th Street in Calumet City. The store building is set back to the east of a city sidewalk. Proceeding east from the east side of the street it is necessary to drive over a low curb, which plaintiff described as "hardly any curb at all." Continuing to the east a motorist passes a city sidewalk and then enters a parking area about two car lengths in width. Directly to the east of this parking area there is a sidewalk in front of the store in question.

Plaintiff drove south on Burnham then made a left turn to the east onto the parking lot and parked her car facing east directly in front of the store door. There were several other cars parked in the same manner. Plaintiff entered the store. The defendant then was also driving south on Burnham. He also made a left turn onto the parking area and parked facing east somewhat south of plaintiff's car. Up to this point the testimony of the parties coincides. After this point there is conflict.

Plaintiff testified she left the store in due course, entered her car, looked to the left and to the right and in her rearview mirror. She then backed up in a westerly direction to the beginning of the sidewalk which forms the east boundary of Burnham. She testified she had turned her car with the rear end facing south and the front facing north in order to proceed back north on Burnham. Plaintiff stopped her car in this posture for 10 or 15 minutes as there was a "convoy of school buses" going north.

She then reduced that time estimate to 5 minutes. She stated about 20 buses passed before the accident.

Plaintiff leaned out of the driver's window and was leaning against the steering wheel. Plaintiff heard, and it felt like, an "explosion." She turned around and saw the back end of defendant's car piggybacked upon the right side of her car. Plaintiff testified her "body was on fire" and she was almost numb. She felt burning pain in her neck and she was bleeding.

Plaintiff had previously testified in her deposition that prior to the collision she drove her car forward into the center part of the parking area. However, she testified on cross-examination that she did not drive her car forward after she reached the sidewalk. Plaintiff also testified a police officer came to the scene and asked her if she was hurt. She said she did not know. The police officer opened the door and helped her out. She fell against the police officer because her leg bowed. She also testified on cross-examination she could not remember if she was bleeding or not.

Plaintiff also testified that, as her car was standing still, she saw a young neighbor of hers named Sherry Zitt, then approximately 13 years old, approaching on foot. This young lady testified defendant's automobile backed into plaintiff's car. However, in a pretrial statement she said plaintiff's car was facing the street and defendant's car hit plaintiff's vehicle on the left or driver's side.

Defendant testified plaintiff left the store first. Defendant intended to leave the parking area with the back of his car turned north as he intended to drive south on Burnham. Defendant looked to the right and then to the left. He did not look in the rearview mirror. He did not remember if he looked in the sideview mirror. He did not see plaintiff's car at any time before contact. As his car turned he was driving about one mile per hour. The left rear of his car came in contact with plaintiff's car. At that time he had moved about 6 feet. Defendant heard, "A minor sound." Both cars stopped immediately. Defendant saw a dented fender on the right side of plaintiff's car. Defendant asked plaintiff is she was all right, and she said, "Yes."

A police officer of Calumet City was acquainted with the plaintiff. When he arrived at the scene he found the rear bumper of defendant's car was up against the right rear side of plaintiff's car. Defendant's car was not piggybacked on plaintiff's car. When the officer arrived plaintiff was standing outside of her car. The officer did not assist her to alight. Plaintiff did not complain of injury. No injury to her was apparent and the officer's report has no reference to injury. Her apparent physical condition was normal.

The officer asked the defendant how the collision occurred. Defendant stated that as he was backing away from his parking place another

vehicle quickly pulled in behind him. Plaintiff told the officer she was backing out of a parking space and waiting for traffic when the other automobile backed out and struck her.

# I

■■ ■ Plaintiff's first contention is that the proof shows overwhelmingly she was not guilty of contributory negligence and defendant was guilty of negligence so that the trial judge should have set aside the general verdict and the answer to the special interrogatory and the trial court should have granted motions for directed verdict in favor of plaintiff on both issues. In this regard we are governed by the established principle that the trial court should have directed a verdict or entered judgment *n.o.v.* in favor of plaintiff if all of the evidence, viewed in its aspect most favorable to defendant, so overwhelmingly favors plaintiff that no contrary verdict on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) Also, the trial judge should have set aside the general verdict and the answer to the interrogatory, and this court may reverse the failure of the trial judge so to do, only where the verdict and the answer are contrary to the manifest weight of the evidence. *Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 423, 412 N.E.2d 447; *Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310, 356 N.E.2d 32.

Our study of this record has convinced us that the case presents issues of credibility only. As above shown, plaintiff and defendant advanced diametrically different versions of the occurrence with each contradicting the other. The testimony of plaintiff's young neighbor and of the police officer add to the conflict. The testimony of plaintiff and of the girl was considerably shaken by impeachment. Defendant's testimony is virtually unimpeached.

■■ Plaintiff cites *Pantlen v. Gottschalk* (1959), 21 Ill. App. 2d 163, 170, 157 N.E.2d 548, *appeal denied* (1959), 17 Ill. 2d 629, in support of the proposition that one may not look "with unseeing eye" and then contend that he had not seen "the danger which he could have seen by the proper exercise of his sight, * * *." However, that principle is not applicable to the case at bar as shown by these authorities.

In *Ritter v. Ferenczi* (1973), 16 Ill. App. 3d 218, 305 N.E.2d 426, *appeal denied* (1974), 55 Ill. 2d 607, defendant reversed his automobile and injured the plaintiff. The parties were about to enter defendant's parked vehicle. Defendant entered at the driver's seat and plaintiff walked around the rear of the car. The jury returned a verdict for defendant. By special interrogatory they found defendant free of negligence and plaintiff guilty of contributory negligence. As the court pointed out, the evidence was conflicting as to where plaintiff fell with relation to

the curb; and also there was no evidence as to what part of defendant's car struck plaintiff. There was some evidence to support the contention that defendant looked back, saw nothing, began to back up the car and plaintiff walked into the path of the vehicle. (16 Ill. App. 3d 218, 222.) The court therefore refused to apply the proposition regarding the "unseeing eye." This court also held that a verdict based on conflicting evidence and approved by the trial judge should not be disturbed by a reviewing court unless contrary to the manifest weight of the evidence which the court defined as a situation in which an opposite conclusion " 'must be clearly evident, clear, plain, indisputable.' " *Ritter*, 16 Ill. App. 3d 218, 222, quoting from *Hitt v. Langel* (1968), 93 Ill. App. 2d 386, 397, 236 N.E.2d 118, *appeal denied* (1968), 39 Ill. 2d 625.

In *Copeland v. Johnson* (1965), 63 Ill. App. 2d 361, 211 N.E.2d 387, defendant was driving her automobile and struck and seriously injured a minor child. The jury returned a verdict of not guilty. Defendant testified she did not see the child prior to the impact. Plaintiff argued strongly that the duty to look implied a duty to see what there was to be seen. (63 Ill. App. 2d 361, 365.) Defendant, however, took the position that there was no evidence that she failed to keep a proper lookout and that she actually had no opportunity to see or avoid the child. This court affirmed the not guilty verdict.

■■■ It therefore follows that upon application of the *Pedrick* rule, we cannot reverse the rulings of the trial judge on direction of a verdict or refusal to enter judgment *n.o.v.* Similarly, we cannot conclude that the general verdict and the answer to the special interrogatory are contrary to the manifest weight of the evidence.

## II

When counsel for defendant cross-examined the plaintiff, he used a blackboard upon which he marked the position of the cars. From time to time the position of the vehicles as indicated on the board were changed during the course of the cross-examination. Plaintiff contends now that use of the blackboard was reversible error. Defendant cites *Farmar v. Crane* (1975), 32 Ill. App. 3d 383, 336 N.E.2d 607, and *Bittner v. Wheel Horse Products, Inc.* (1975), 28 Ill. App. 3d 44, 328 N.E.2d 160, *appeal denied* (1975), 60 Ill. 2d 595, as authority for the proposition that the blackboard and the figures drawn thereon constitute demonstrative evidence so that the use of this device was a matter within the discretion of the trial court and the ruling of the court thereon was well within the bounds of reasonable discretion.

In *Bittner*, this court approved action by a trial judge in receiving a snowblower machine into evidence but refusing plaintiff the right to start and operate the machine in the presence of the jury. (28 Ill. App. 3d 44,

48-49.) In *Farmar*, this court approved the use of a magnetic blackboard upon which metal facsimiles of small automobiles could be placed in different positions. 32 Ill. App. 3d 383, 389.

■■ Upon examination of the record in the instant case, we see no abuse of discretion by the trial judge in permitting this use of the blackboard in cross-examination. In our opinion, the use of the board did not prejudice the plaintiff in any manner. Actually, the record shows that during the cross-examination counsel for plaintiff suggested that plaintiff herself should place marks upon the blackboard to assist in the demonstration. Plaintiff then adopted this and asked if she could do so. Counsel for defendant agreed. Plaintiff responded "Good" and proceeded to make marks upon the blackboard to indicate her version of the occurrence.

■■ We also note that when defendant's counsel commenced the use of the blackboard he stated in open court that diagrams drawn thereon would not be in accordance with scale. In final argument to the jury, counsel for defendant stated that "at least certain portions" of the matters drawn upon the blackboard were to scale. However, counsel for plaintiff promptly objected to this statement. The careful trial judge immediately sustained the objection, ordered that this statement be stricken and instructed the jury to disregard it. In our opinion, this prompt action by the trial court was sufficient completely to overcome the statement concerning scale. In our opinion plaintiff was not unduly prejudiced by this remark in light of the prompt ruling by the court. We find no prejudicial error in this regard.

### III

■■ Plaintiff cites *Albaugh v. Cooley* (1980), 88 Ill. App. 3d 320, 410 N.E.2d 873, and urges that the special interrogatory is an unconstitutional device. The Supreme Court of Illinois reversed *Albaugh* and held use of the special interrogatory is proper. (*Albaugh v. Cooley* (1981), 87 Ill. 2d 24, 429 N.E.2d 837.) In addition, as we did in *Malpica v. Sebastian* (1981), 99 Ill. App. 3d 346, 350, 425 N.E.2d 1029, we will be guided by the decision of this court in *Brock v. Winton* (1980), 82 Ill. App. 3d 1010, 403 N.E.2d 690. In *Brock*, as in *Malpica* and the instant case, the answer to the special interrogatory is consistent with the general verdict. Consequently, the answer to the special interrogatory is meaningless. "The real question is whether there is sufficient evidence to support the general verdict." *Brock*, 82 Ill. App. 3d 1010, 1012.

### IV

■■ Plaintiff finally urges this court should apply *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, to the case at bar and remand the case for a new

trial. In our opinion, *Alvis* is not applicable here. The opinion in *Alvis* was filed April 17, 1981, and was modified on June 4, 1981, on denial of rehearing. The principles of *Alvis* are applicable only to cases in which trial commenced on or after June 8, 1981. (See 85 Ill. 2d 1, 28.) Trial in the instant case commenced May 20, 1980. For these reasons the judgment appealed from is affirmed.

Judgment affirmed.

CAMPBELL, P. J., and McGLOON, J., concur.